## EXHIBIT A

## INDEX OF ALL DOCUMENTS FILED IN STATE COURT ACTION

| EXHIBIT | DATE FILED | DOCUMENT TITLE |
|---------|-----------|----------------|
| A-1 | 07/05/13 | DOCKET SHEET |
| A-2 | 03/27/13 | PLAINTIFFS ROOSTER OIL & GAS, LLC AND ITS AFFILIATE, ROOSTER PETROLEUM, LLC'S ORIGINAL PETITION |
| A-3 | 03/27/13 | REQUEST FOR CITATION |
| A-4 | 04/11/13 | RETURN OF SERVICE |
| A-5 | 04/17/13 | RULE 11 AGREEMENT |
| A-6 | 05/03/13 | DEFENDANTS BIRNHAM ENERGY INVESTMENT COMPANY, L.P. AND IMPLICIT OIL & GAS (VR 376) LLC'S ORIGINAL ANSWER |
| A-7 | 05/09/13 | COUNTER-PLAINTIFFS BIRNHAM ENERGY INVESTMENT COMPANY, L.P. AND IMPLICIT OIL & GAS (VR 376) LLC AND TEXAS OG ACQUISITIONS, LLC'S ORIGINAL COUNTERCLAIM AND APPLICATION FOR APPOINTMENT OF RECEIVER |
| A-8 | 05/14/13 | CHANGE OF ADDRESS |
| A-9 | 05/16/13 | COUNTER-PLAINTIFFS BIRNHAM ENERGY INVESTMENT COMPANY, L.P. AND IMPLICIT OIL & GAS (VR 376) LLC AND TEXAS OG ACQUISITIONS, LLC'S ORIGINAL COUNTERCLAIM AND APPLICATION FOR APPOINTMENT OF RECEIVER |
| A-10 | 06/06/13 | NOTICE OF HEARING |
| A-11 | 06/07/13 | COUNTER-PLAINTIFFS BIRNHAM ENERGY INVESTMENT COMPANY, L.P. AND IMPLICIT OIL & GAS (VR 376) LLC AND TEXAS OG ACQUISITIONS, LLC'S ORIGINAL COUNTERCLAIM AND APPLICATION FOR APPOINTMENT OF RECEIVER |
| A-12 | 06/10/13 | REQUEST FOR CITATION |
| A-13 | 06/27/13 | RETURN OF SERVICE |
| A-14 | 06/27/13 | NOTICE OF HEARING |

**HCDistrictclerk.com**      ROOSTER OIL & GAS LLC vs. BIRNHAM ENERGY      7/5/2013
INVESTMENT COMPANY L P (F/K/A IMPLI
Cause: 201317984      CDI: 7      Court: 165

**APPEALS**

No Appeals found.

**COST STATMENTS**

No Cost Statments found.

**TRANSFERS**

No Transfers found.

**POST TRIAL WRITS**

No Post Trial Writs found.

**ABSTRACTS**

No Abstracts found.

**NOTICES**

No Notices found.

**SUMMARY**

CASE DETAILS

| | | |
|---|---|---|
| **File Date** | 3/27/2013 | |
| **Case (Cause) Location** | Civil Intake 1st Floor | |
| **Case (Cause) Status** | Ready Docket | |
| **Case (Cause) Type** | BREACH OF CONTRACT | |
| **Next/Last Setting Date** | 7/15/2013 | |
| **Jury Fee Paid Date** | 3/27/2013 | |

COURT DETAILS

| | |
|---|---|
| **Court** | 165th |
| **Address** | 201 CAROLINE (Floor: 12) HOUSTON, TX 77002 Phone:7133686270 |
| **JudgeName** | ELIZABETH RAY |
| **Court Type** | Civil |

**ACTIVE PARTIES**

| Name | Type | Post Jdgm | Attorney |
|---|---|---|---|
| ROOSTER OIL & GAS LLC | PLAINTIFF - CIVIL | | RICHMOND, BEATRIZ QUINTANA |
| ROOSTER OIL & GAS LLC | CROSS DEFENDANT | | |
| BIRNHAM ENERGY INVESTMENT COMPANY L P (F/K/A IMPLICIT OIL & GAS LP) | DEFENDANT - CIVIL | | KHOURY, STEPHEN A. |
| BIRNHAM ENERGY INVESTMENT COMPANY L P (F/K/A IMPLICIT OIL & GAS LP) | CROSS PLAINTIFF | | KHOURY, STEPHEN A. |
| ROOSTER PETROLEUM LLC | PLAINTIFF - CIVIL | | RICHMOND, BEATRIZ QUINTANA |
| ROOSTER PETROLEUM LLC | CROSS DEFENDANT | | |

EXHIBIT A-1

| IMPLICIT OIL & GAS (VR 376) LLC | DEFENDANT - CIVIL | |
| IMPLICIT OIL & GAS (VR 376) LLC | CROSS PLAINTIFF | KHOURY, STEPHEN A. |
| IMPLICIT OIL & GAS LP | DEFENDANT - CIVIL | |
| BIRNHAM ENERGY INVESTMENT COMPANY L P (F/K/A IMPLICIT OIL & GAS LP) | REGISTERED AGENT | |
| IMPLICIT OIL & GAS (VR 376) LLC (FOREIGN CORPORATION) MAY BE SERVED BY | REGISTERED AGENT | |
| 376 OG HOLDING LLC | CROSS PLAINTIFF | KHOURY, STEPHEN A. |
| TEXAS OG ACQUISITIONS LLC | CROSS PLAINTIFF | KHOURY, STEPHEN A. |
| ROOSTER ENERGY LLC | CROSS DEFENDANT | |
| ROOSTER ENERGY LTD | CROSS DEFENDANT | |
| MURPHY, ROBERT | CROSS DEFENDANT | |
| TAMPLAIN, KENNETH F JR | CROSS DEFENDANT | |
| MORRISON, CHET | CROSS DEFENDANT | |
| ROOSTER ENERGY LTD BY SERVING ITS CEO AND PRESIDENT ROBERT MURPHY | REGISTERED AGENT | |
| MORRISON, CHET BY SERVING THE TEXAS SECRETARY OF STATE 1019 BRAZOS | REGISTERED AGENT | |
| ROOSTER ENERGY LLC BY SERVING ITS CEO AND PRESIDENT ROBERT MURPHY | REGISTERED AGENT | |

      16285 PARK 10 PLACE, HOUSTON, TX 77084

## INACTIVE PARTIES

No inactive parties found.

## JUDGMENT/EVENTS

| Date | Description | Order Signed | Post Jdgm | Pgs | Volume /Page | Filing Attorney | Person Filing |
|------|-------------|--------------|-----------|-----|--------------|-----------------|---------------|
| 6/27/2013 | DESIGNATED TRIAL READY | | | 0 | | | |
| 5/9/2013 | COUNTER CLAIM | | | 0 | | KHOURY, STEPHEN A. | BIRNHAM ENERGY INVESTMENT COMPANY L P (F/K/A IMPLICIT OIL & GAS LP) |
| 5/9/2013 | COUNTER CLAIM | | | 0 | | KHOURY, STEPHEN A. | IMPLICIT OIL & GAS (VR 376) LLC |
| 5/9/2013 | COUNTER CLAIM | | | 0 | | KHOURY, STEPHEN A. | 376 OG HOLDING LLC |
| 5/9/2013 | COUNTER CLAIM | | | 0 | | KHOURY, STEPHEN A. | TEXAS OG ACQUISITIONS LLC |
| 5/3/2013 | ANSWER | | | 0 | | KHOURY, STEPHEN A. | BIRNHAM ENERGY INVESTMENT COMPANY L P (F/K/A IMPLICIT OIL & GAS LP) |
| 3/27/2013 | JURY FEE PAID (TRCP 216) | | | 0 | | | |
| 3/27/2013 | JURY DEMAND MADE (TRCP 216) | | | 0 | | | |

| 3/27/2013 | ORIGINAL PETITION | 0 | RICHMOND, BEATRIZ QUINTANA | ROOSTER OIL & GAS LLC |
| 3/27/2013 | ORIGINAL PETITION | 0 | RICHMOND, BEATRIZ QUINTANA | ROOSTER PETROLEUM LLC |

## SETTINGS

| Date | Court Post Jdgm | Docket Type | Reason | Results | Comments | Requesting Party |
|------|-----------------|-------------|--------|---------|----------|------------------|
| 7/15/2013 10:30 AM | 165 | Law Day Docket | APPT. RECEIVER | | | |
| 7/15/2013 10:30 AM | 165 | Law Day Docket | RULE FOR COSTS MOTION TO (TRCP 143) | | | |
| 6/09/2014 09:00 AM | 165 | Trial Setting | Trial on Merits | | | |

## SERVICES

| Type | Status | Instrument | Person | Requested | Issued | Served | Returned | Received | Tra |
|------|--------|------------|--------|-----------|--------|--------|----------|----------|-----|
| CITATION CORPORATE | | ORIGINAL PETITION | BIRNHAM ENERGY INVESTMENT COMPANY L P (F/K/A IMPLICIT OIL & GAS LP) | 3/27/2013 | 4/2/2013 | | | | 7288 |
| | | | 8080 N CENTRAL EXPRESSWAY SUITE 1250 DALLAS TX 75206 | | | | | | |
| | | | 8080 N CENTRAL EXPRESSWAY SUITE 1250 DALLAS TX 75206 | | | | | | |
| CITATION (SECRETARY OF STATE FOREIGN CORPORATION) | SERVICE RETURN/EXECUTED | ORIGINAL PETITION | IMPLICIT OIL & GAS (VR 376) LLC (FOREIGN CORPORATION) MAY BE SERVED BY | 3/27/2013 | 4/2/2013 | 4/8/2013 | 4/11/2013 | | 7288 |
| | | | 8080 N CENTRAL EXPY SUITE 1250 DALLAS TX 75206 | | | | | | |
| | | | 8080 N CENTRAL EXPY SUITE 1250 DALLAS TX 75206 | | | | | | |
| CITATION | SERVICE ISSUED/IN POSSESSION OF SERVING AGENCY | CROSS ACTION/COUNTER CLAIM | MURPHY, ROBERT | 5/9/2013 | 5/15/2013 | | | | 7290 |
| | | | 16285 PARK 10 PLACE HOUSTON TX 77084 | | | | | | |
| CITATION | SERVICE ISSUED/IN POSSESSION OF SERVING AGENCY | CROSS ACTION/COUNTER CLAIM | TAMPLAIN, KENNETH F JR | 5/9/2013 | 5/15/2013 | | | | 7290 |
| | | | 16285 PARK 10 PLACE HOUSTON TX 77084 | | | | | | |
| CITATION CORPORATE | SERVICE ISSUED/IN POSSESSION OF SERVING AGENCY | CROSS ACTION/COUNTER CLAIM | ROOSTER ENERGY LTD BY SERVING ITS CEO AND PRESIDENT ROBERT MURPHY | 5/9/2013 | 5/15/2013 | | | | 7290 |
| CITATION (NON-RESIDENT) | SERVICE RETURN/EXECUTED | CROSS ACTION/COUNTER CLAIM | MORRISON, CHET | 5/9/2013 | 5/15/2013 | 6/18/2013 | | | 7290 |
| CITATION (SECRETARY OF STATE NON-RESIDENT) | SERVICE ISSUED/IN POSSESSION OF SERVING AGENCY | CROSS ACTION/COUNTER CLAIM | MORRISON, CHET BY SERVING THE TEXAS SECRETARY OF | 5/16/2013 | 5/17/2013 | | | | 7290 |

| CITATION CORPORATE | SERVICE ISSUED/IN POSSESSION OF SERVING AGENCY | CROSS ACTION/COUNTER CLAIM | STATE 1019 BRAZOS ROOSTER ENERGY LLC BY SERVING ITS CEO AND PRESIDENT ROBERT MURPHY | 6/7/2013 | 6/10/2013 | 7291 |
|---|---|---|---|---|---|---|

## DOCUMENTS

| Number | Document | Post Jdgm | Date | Pgs |
|---|---|---|---|---|
| 56450638 | Hearing notice letter | | 06/27/2013 | 1 |
| 56450689 | THE STATE OF TEXAS SECREARY OF STATE | | 06/27/2013 | 1 |
| 56271899 | Civil Process Pick-Up Form | | 06/10/2013 | 1 |
| 56246255 | COUNTERPLAINTIFFS ORIGINAL COUNTERCLAIM AND APPLICATION FOR APPOINTMENT OF RECEIVER | | 06/07/2013 | 21 |
| 56234172 | Hearing notice to opposing counsel with copy to court | | 06/06/2013 | 1 |
| 56236176 | Hearing notice | | 06/06/2013 | 1 |
| 55723500 | Additional copy counter-plaintiffs original counterclaim and application for appointment of receiver for service | | 05/16/2013 | 22 |
| 55922599 | Letter regarding new address | | 05/14/2013 | 1 |
| 55628521 | counter-plaintiffs original counterclaim and application for appointment of receiver | | 05/09/2013 | 22 |
| | counter-plaintiffs original counterclaim and application for appointment of receiver | | 05/09/2013 | |
| | counter-plaintiffs original counterclaim and application for appointment of receiver | | 05/09/2013 | |
| | counter-plaintiffs original counterclaim and application for appointment of receiver | | 05/09/2013 | |
| -> 55628522 | Exhibit "A" | | 05/09/2013 | 30 |
| -> 55628523 | Exhibit B | | 05/09/2013 | 81 |
| -> 55628524 | Exhibit c | | 05/09/2013 | 17 |
| -> 55628525 | Exhibit d | | 05/09/2013 | 12 |
| -> 55628526 | Exhibit e | | 05/09/2013 | 9 |
| -> 55628527 | Exhibit f | | 05/09/2013 | 4 |
| -> 55628528 | Exhibit g | | 05/09/2013 | 8 |
| -> 55628529 | Exhibit h | | 05/09/2013 | 4 |
| -> 55628530 | Exhibit i | | 05/09/2013 | 20 |
| 55553875 | Defendants Original Answer | | 05/03/2013 | 4 |
| 55340998 | Rule 11 Agreement | | 04/17/2013 | 1 |
| 55298775 | Citation (SECRETARY OF STATE FOREGIN CORPORATION) | | 04/11/2013 | 2 |
| 55184637 | Civil Bureau Process Pick-Up Form | | 04/02/2013 | 1 |
| 55178782 | Filing letter | | 03/28/2013 | 1 |
| 55137439 | Plaintiffs Original Petition | | 03/27/2013 | 7 |
| -> 55137444 | Civil Case Information Sheet | | 03/27/2013 | 1 |
| -> 55137445 | Civil Process Request | | 03/27/2013 | 2 |
| -> 55137441 | Exhibit A | | 03/27/2013 | 30 |
| -> 55137442 | Exhibit B | | 03/27/2013 | 81 |
| -> 55137443 | Exhibit C | | 03/27/2013 | 15 |
| 55137439 | Plaintiffs Original Petition | | 03/27/2013 | 7 |

Filed 13 March 27 A11:16
Chris Daniel - District Clerk
Harris County
ED101J017398696
By: Sharon Carlton

## 2013-17984 / Court: 165

CAUSE NO. _____

| | | |
|---|---|---|
| ROOSTER OIL & GAS, LLC AND<br>ROOSTER PETROLEUM, LLC | §<br>§ | IN THE DISTRICT COURT |
| v. | §<br>§ | _____ JUDICIAL DISTRICT |
| BIRNHAM ENERGY INVESTMENT<br>COMPANY, L.P. F/K/A IMPLICIT OIL<br>& GAS, LP AND<br>IMPLICIT OIL & GAS, (VR 376), LLC | §<br>§<br>§<br>§ | HARRIS COUNTY, TEXAS |

### PLAINTIFFS' ORIGINAL PETITION

NOW INTO COURT, through undersigned counsel, come Plaintiffs Rooster Oil & Gas, LLC and its affiliate, Rooster Petroleum, LLC (collectively, "Rooster" or "Plaintiffs"), to file this Original Petition against Defendants, Birnham Energy Investment Company, L.P., f/k/a Implicit Oil & Gas, LP, ("Implicit OG") and Implicit Oil & Gas (VR 376), LLC ("Implicit VR 376") (collectively "Implicit" or "Defendants"), and for Plaintiffs' claims and causes of action provide as follows:

### DISCOVERY-CONTROL PLAN

1. Plaintiffs intend to conduct Level III discovery under Texas Rules of Civil Procedure 190.4.

### PARTIES

2. Plaintiff, Rooster Oil & Gas, LLC, is a Delaware limited liability company with its principal place of business in Houston, Texas.

3. Plaintiff, Rooster Petroleum, LLC, is a Delaware limited liability company with its principal place of business in Houston, Texas.

EXHIBIT A-2

4.      Defendant, Implicit OG, is a Texas limited partnership doing business in the State of Texas and may be served with process by serving its president, Edmond G. Boutte at 8080 N. Central Expressway, Suite 1250, Dallas Texas 7506 and/or by serving its registered agent, Ron Beneke, 8080 N. Central Expressway, Suite 1250, Dallas, Texas 75206.

5.      Defendant, Implicit VR 376, is a foreign corporation organized and existing under the laws of the State of Delaware, whose home office is located at 8080 N. Central Expy., Suite 1250, Dallas, Texas  75206, may be served with process by serving the Texas Secretary of State 1019 Brazos Street, Austin, Texas  78701 as its agent for service because defendant engages in business in Texas but has not designated or maintained a resident agent for service of process in Texas.

### JURISDICTION

6.      The Court has jurisdiction over the lawsuit because the amount in controversy exceeds this Court's minimum jurisdictional requirements.  Furthermore, this Court has jurisdiction over the Defendants because Implicit OG is a Texas limited partnership and Implicit VR 376  is doing business in Texas.

### VENUE

7.      Venue is mandatory in Harris County, Texas pursuant to Section 15.020 of the Texas Civil Practice and Remedies Code because this suit involves a "major transaction" as defined by that section, and this is the county designated in writing as the county for suit.  *See* Participation Agreement at ¶14.

## FACTUAL BACKGROUND

8.    On or about January 6, 2012, Rooster and Implicit OG entered into an agreement to confirm their participation in the drilling of two wells on the oil and gas lease identified as OCS-G 14428, Vermilion Area, Block 376 ("VR 376") (the agreement is hereinafter referred to as the "Participation Agreement" and is attached hereto as Exhibit "A").

9.    The two wells included the OCS-G 14428 Vermilion Block 376 #A-3 and the OCS-G 14428 Vermillion Block Block 376 #A-4  (collectively, the "Exploratory Wells").

10.    Pursuant to the terms of the Participation Agreement, Rooster agreed to assign to Implicit an undivided twenty-five percent working interest in the wellbore of each of the Exploratory Wells (the "Interests") in consideration for Implicit's participation in the Exploratory Wells. *See* Participation Agreement at ¶ 1.

11.    Further, at Paragraph 2 of the Participation Agreement, Rooster and Implicit OG agreed to the consideration terms, the paragraph in pertinent part provides:

> Participant hereby agrees as consideration to assume and hereby does obligate itself to pay 33.33333% of all the AFE costs (even costs prior to the Effective Date) to the Casing Point election (as hereinafter defined) in each of the Exploratory Wells to earn twenty-five percent (25%) working interest in each of the wellbores. Participant shall have the option, at Casing Point of each of the Exploratory Wells, to elect to participate in the completion of such Exploratory Well, and if Participant elects to participate in the completion of such Exploratory Well, it shall then be obligated to pay its twenty-five percent (25%) share of all other costs including completion . . . of such Exploratory Well, subsequent to the Casing Point election attributable to the Assigned Interest. . . ."

12.    At Casing Point, Implicit OG elected to participate in the completion of the Exploratory Wells.

13.     In accordance with the Participation Agreement and pursuant to the Wellbore Assignment and Bill of Sale, Rooster assigned the 25% working interests in the Exploratory Wells to Implicit VR 376, the permitted nominee of Implicit OG. *See* Wellbore Assignment and Bill of Sale, attached as Exhibit "C-1" to the Participation Agreement.

14.     Implicit VR 376, as nominee of Implicit OG, is a party to and subject to all terms, conditions and obligations set forth in the Participation Agreement.

15.     However, Implicit failed and/or refused to pay its share of the completion costs for the Exploratory Wells.

16.     To date, Implicit owes Rooster the sum of $2,117,326.33 in unpaid completion costs.

17.     Further, pursuant to the terms of an Offshore Operating Agreement dated October 1, 1999, Implicit also agreed to pay its proportionate share of lease operating expenses on OCS-G 14428 and has failed to do. A copy of the Operating Agreement is attached as Exhibit "B."

18.     Consequently, Rooster is entitled to reimbursement for unpaid lease operating expenses plus those costs and fees incurred and allowable under the Operating Agreement in an amount to be proven at trial as the monthly lease operating expenses continue to accrue.

19.     Further, pursuant to Paragraph 21 of the Participation Agreement, Implicit VR 376 was prohibited from transferring or assigning "all or any portion of its interest in the Exploratory Wells [without] the express written consent of Rooster (which shall not be unreasonably withheld) and shall be made expressly subject to this Participation Agreement and the terms and provisions hereof."

20.     By Assignment Agreement dated September 17, 2012, Implicit VR 376  assigned all of its Interests in the Participation Agreement to Texas OG Acquisitions, LLC ("Acquisitions"). The Assignment Agreement is attached hereto as Exhibit "C."

21.     Implicit VR 376 never requested or obtained the express written consent of Rooster to assign its Interests to Acquisitions, and in doing so, violated Paragraph 21 of the Participation Agreement.

## CAUSES OF ACTION

## COUNT I: BREACH OF CONTRACT

22.     Rooster incorporates by reference Paragraphs 1 through 16 above.

23.     Although Plaintiffs have fully performed their contractual obligations under the Participation Agreement and Operating Agreement, Implicit breached both Agreements by failing to and/or refusing to pay its share of the completion costs and lease operating expenses for the Exploratory Wells, as agreed upon in Paragraph 2 of the Participation Agreement.

24.     Further, Implicit breached the Participation Agreement by assigning all of its Interests in the Participation Agreement to Acquisitions without requesting or obtaining the express written consent of Rooster as required by Paragraph 21 of the Participation Agreement.

25.     Implicit's breach has caused damages to Rooster in the sum of $2,117,326.53 in unpaid completion costs and additional costs and expenses.

26.     As a result of Defendants' breach of the Participation Agreement, Plaintiffs' retained undersigned counsel to prosecute this claim.  Plaintiffs have incurred to date and will continue to incur costs associated with the prosecution of this litigation, including attorneys' fees, expenses, and costs for which Plaintiffs seek reimbursement under Paragraph 14 of the Participation Agreement and pursuant to Texas Civil Practice & Remedies Code § 38.001, *et. seq.*

## COUNT II: QUANTUM MERUIT

27.     Rooster incorporates by reference Paragraphs 1 through 21 above.

28.     Alternatively, Rooster brings this action to recover in quantum meruit for the valuable services provided to Implicit in connection with Rooster's participation in the Exploratory Wells. Implicit accepted these services and benefited from Rooster's participation in the Exploratory Wells.  Failure to allow Rooster to recover for the reasonable value of these services would result in the unjust enrichment of Implicit.

29.     Plaintiffs seek the reasonable value of the services provided in its participation in the Exploratory Wells.

## ATTORNEYS' FEES

30.     Rooster has been required to obtain counsel in order to collect its claims against Implicit. As such, Rooster has incurred and will continue to incur reasonable attorneys' fees in prosecuting this matter.  Pursuant to Paragraph 14 of the Participation Agreement and Texas Civil Practice & Remedies Code § 38.001, *et. seq.*, Implicit is liable for Rooster's reasonable attorneys' fees and costs incurred in connection with the collection of the sums due under the Participation Agreement.

## CONDITIONS PRECEDENT

31.     All conditions precedent to Plaintiffs' claim for relief have been performed or have occurred as required by Texas Rules of Civil Procedure 54.

## JURY TRIAL

32.     Plaintiffs demand a jury trial and tender the appropriate fees with this Original Petition.

## REQUEST FOR DISCLOSURES

33.     Under Texas Rules of Civil Procedure 194, Plaintiffs request that Defendants disclose, within 50-days of the service of this request, the information or material described in Rule 194.2.

## PRAYER

34.     For these reasons, Plaintiffs pray that this Court issue citation for Defendants to appear

and answer, and that Plaintiffs be awarded a judgment against Defendants for the following:

    A.    Actual damages;

    B.    Consequential damages;

    C.    Exemplary damages;

    D.    Reasonable attorneys' fees;

    E.    Pre-judgment and Post-judgment interest;

    F.    Court Costs

    G.    Attorneys' fees; and

    H.    All other relief in law and equity to which Rooster may be entitled.

Respectfully submitted,

**BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC**

BY:    ~~BRP-D~~

MARK MATHEWS (TBN 13190400)
BEATRIZ RICHMOND (TBN 24083734)
1301 McKinney Street, Suite 3700
Houston, TX 77010
Telephone:    (713) 650-9700
Facsimile:    (713) 650-9701

**ATTORNEYS FOR PLAINTIFFS,
ROOSTER OIL & GAS, LLC
ROOSTER PETROLEUM, LLC**

Unofficial Copy Official of Chris Daniel District Clerk

**CIVIL CASE INFORMATION SHEET**

Filed 13 March 27 A11:16
Chris Daniel - District Clerk
Harris County
ED101J017398696
By: ~~Sharon Carlton~~

CAUSE NUMBER *(FOR CLERK USE ONLY):* **2013-17984 / Court: 165**   COURT *(FOR CLERK USE ONLY):*

STYLED Rooster Oil & Gas, LLC v. Birnham Energy Investment Co.
*(e.g., John Smith v. All American Insurance Co; In re Mary Ann Jones; In the Matter of the Estate of George Jackson)*

A civil case information sheet must be completed and submitted when an original petition or application is filed to initiate a new civil, family law, probate, or mental health case or when a post-judgment petition for modification or motion for enforcement is filed in a family law case. The information should be the best available at the time of filing.

| 1. Contact information for person completing case information sheet: | Names of parties in case: | Person or entity completing sheet is: |
|---|---|---|
| Name: Beatriz Richmond  Email: BRichmond@Baker Donelson.com | Plaintiff(s)/Petitioner(s): Rooster Oil & Gas et al. | ☒ Attorney for Plaintiff/Petitioner ☐ Pro Se Plaintiff/Petitioner ☐ Title IV-D Agency ☐ Other: |
| Address: 1301 McKinney #3700   Telephone: 713-650-9700 | | Additional Parties in Child Support Case: |
| City/State/Zip: Houston, TX 77010   Fax: 713-650-9701 | Defendant(s)/Respondent(s): Birnham Energy Investment Company L.P., et al. | Custodial Parent: |
| Signature: REB'D   State Bar No.: 13190400 | | Non-Custodial Parent: |
| | *[Attach additional page as necessary to list all parties]* | Presumed Father: |

**2. Indicate case type, or identify the most important issue in the case (select only 1):**

| Civil | | | Family Law |
|---|---|---|---|

| Contract | Injury or Damage | Real Property | Marriage Relationship | Post-judgment Actions (non-Title IV-D) |
|---|---|---|---|---|
| *Debt/Contract* ☐ Consumer/DTPA ☐ Debt/Contract ☐ Fraud/Misrepresentation ☐ Other Debt/Contract: | ☐ Assault/Battery ☐ Construction ☐ Defamation *Malpractice* ☐ Accounting ☐ Legal ☐ Medical ☐ Other Professional Liability: | ☐ Eminent Domain/ Condemnation ☐ Partition ☐ Quiet Title ☐ Trespass to Try Title ☐ Other Property: | ☐ Annulment ☐ Declare Marriage Void *Divorce* ☐ With Children ☐ No Children | ☐ Enforcement ☐ Modification—Custody ☐ Modification—Other |
| *Foreclosure* ☐ Home Equity—Expedited ☐ Other Foreclosure ☐ Franchise ☐ Insurance ☐ Landlord/Tenant ☐ Non-Competition ☐ Partnership ☒ Other Contract: | ☐ Motor Vehicle Accident ☐ Premises *Product Liability* ☐ Asbestos/Silica ☐ Other Product Liability List Product: ___ ☐ Other Injury or Damage: | **Related to Criminal Matters** ☐ Expunction ☐ Judgment Nisi ☐ Non-Disclosure ☐ Seizure/Forfeiture ☐ Writ of Habeas Corpus— Pre-indictment ☐ Other: | ☐ Enforce Foreign Judgment ☐ Habeas Corpus ☐ Name Change ☐ Protective Order ☐ Removal of Disabilities of Minority ☐ Other: | **Title IV-D** ☐ Enforcement/Modification ☐ Paternity ☐ Reciprocals (UIFSA) ☐ Support Order |
| | | | **Other Family Law** | **Parent-Child Relationship** ☐ Adoption/Adoption with Termination ☐ Child Protection ☐ Child Support ☐ Custody or Visitation ☐ Gestational Parenting ☐ Grandparent Access ☐ Parentage/Paternity ☐ Termination of Parental Rights ☐ Other Parent-Child: |

| Employment | Other Civil | |
|---|---|---|
| ☐ Discrimination ☐ Retaliation ☐ Termination ☐ Workers' Compensation ☐ Other Employment: | ☐ Administrative Appeal ☐ Antitrust/Unfair Competition ☐ Code Violations ☐ Foreign Judgment ☐ Intellectual Property | ☐ Lawyer Discipline ☐ Perpetuate Testimony ☐ Securities/Stock ☐ Tortious Interference ☐ Other: |

| Tax | Probate & Mental Health | |
|---|---|---|
| ☐ Tax Appraisal ☐ Tax Delinquency ☐ Other Tax | *Probate/Wills/Intestate Administration* ☐ Dependent Administration ☐ Independent Administration ☐ Other Estate Proceedings | ☐ Guardianship—Adult ☐ Guardianship—Minor ☐ Mental Health ☐ Other: |

**3. Indicate procedure or remedy, if applicable (may select more than 1):**

| | | |
|---|---|---|
| ☐ Appeal from Municipal or Justice Court ☐ Arbitration-related ☐ Attachment ☐ Bill of Review ☐ Certiorari ☐ Class Action | ☐ Declaratory Judgment ☐ Garnishment ☐ Interpleader ☐ License ☐ Mandamus ☐ Post-judgment | ☐ Prejudgment Remedy ☐ Protective Order ☐ Receiver ☐ Sequestration ☐ Temporary Restraining Order/Injunction ☐ Turnover |

**4. Indicate damages sought (do not select if it is a family law case):**
☐ Less than $100,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees
☐ Less than $100,000 and non-monetary relief
☐ Over $100,000 but not more than $200,000
☐ Over $200,000 but not more than $1,000,000
☒ Over $1,000,000

Rev 2/13

2013-17984 / Court: 165

# EXHIBIT "A"

Unofficial Copy Office of Chris Daniel District Clerk



**ROOSTER PETROLEUM, LLC**
16285 Park Ten Place, Suite 120 – Houston, Texas ~ 77084
Telephone (832) 772-6313 ♦ Facsimile (832) 772-6314

KENNETH E. TAMPLAIN, JR.
VICE PRESIDENT – LAND & LEGAL
DIRECT PHONE: (713) 574-7558
EMAIL: KTAMPLAIN@ROOSTERPETROLEUM.COM

January 6, 2012

Mr. Edmond G. Boutte
Implicit Oil & Gas LP
8080 N. Central Expressway
Suite 1250
Dallas, Texas 75206-1881

                    RE:    Participation Agreement, Rooster VR 376 A-3 & A-4 Wells
                               OCS-G 14428, Vermilion Area, Block 376
                               Offshore Louisiana

Dear Mr. Boutte:

This agreement to participate (this *"Participation Agreement"*) is effective as of the 6th day of January, 2012 (the *"Effective Date"*), between Rooster Oil & Gas, LLC, and its affiliate, Rooster Petroleum, LLC, (together *"Rooster"*, unless individually identified) and Implicit Oil & Gas LP, a Texas limited partnership, (*"Participant"*) to confirm the participation by Rooster and Participant in the drilling of two (2) wells on the oil and gas lease identified as OCS-G 14428, Vermilion Area, Block 376 (*"VR 376"*), hereinafter referred to as the *"Lease"*, and more particularly described in Exhibit "A" attached hereto and made a part hereof. Each of the aforementioned parties shall sometimes hereinafter be referred to individually as a *"Party"* and collectively as the *"Parties"*.

For and in consideration of the mutual promises contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Rooster and the Participant hereby agree as follows:

1.    <u>Participation to Earn Interest</u>.  Rooster is the owner of 50% of the Operating Rights interest in the Lease. Apache Corporation (*"Apache"*) is the owner of 50% of the Operating Rights interest in the Lease. Participant hereby agrees to participate in the drilling of two (2) wells which should be named the OCS-G 14428 Vermilion Block 376 #A-3 Well (*"VR 376 A-3 Well"*) and the OCS-G 14428 Vermilion Block 376 #A-4 Well

(*"VR 376 A-4 Well"*) (together, the *"Exploratory Wells"* unless individually identified) each to be drilled from the Rooster Petroleum, LLC Vermilion 376 A Platform (*"Platform"*). The VR 376 A-3 Well shall have a bottom hole location approximately 11839' from the north line and 590' from the west line on the Lease. The VR 376 A-4 Well shall have a bottom hole location approximately 4275' from the north line and 1274' from the west line on the Lease.

In consideration of Participant's participation in the Exploratory Wells in accordance with the terms of this Agreement, Rooster hereby agrees to assign to Participant an undivided twenty-five percent (25%) working interest in the wellbore of each of the Exploratory Wells (the *"Assigned Interest"*) upon commencement of operations for the first of the Exploratory Wells. The Assigned Interest shall be derived or carved out from the Apache Corporation non-consent leasehold Operating Rights in the Exploratory Wells and title to production therefrom that shall be owned and vested in Rooster upon commencement of operations on the Exploratory Wells and Participant shall be entitled to an assignment of the Assigned Interest as limited in Paragraph 7 herein.

2.    Consideration. Rooster hereby agrees as consideration to grant to Participant the right to participate in the drilling of the Exploratory Wells proposed under the existing Operating Agreement (as defined in Paragraph 6 hereinafter). The estimated drilling costs for the Exploratory Wells are set forth in the Rooster authority for expenditure #12101 for the VR 376 A-3 Well and #12102 for the VR 376 A-4 Well (collectively the *"AFE"*) incorporated herein and made a part hereof as Exhibit "B-1" and Exhibit "B-2" respectively. It is anticipated that the completed Exploratory Wells will be connected for processing on the Platform. Participant hereby agrees as consideration to assume and hereby does obligate itself to pay 33.33333% of all the AFE costs (even costs prior to the Effective Date) to the Casing Point election (as hereinafter defined) in each of the Exploratory Wells to earn twenty-five percent (25%) working interest in each of the wellbores. Participant shall have the option, at Casing Point of each of the Exploratory Wells, to elect to participate in the completion of such Exploratory Well, and if Participant elects to participate in the completion of such Exploratory Well, it shall then be obligated to pay its twenty-five percent (25%) share of all other costs including completion or if applicable, plugging and abandonment of such Exploratory Well, subsequent to the Casing Point election attributable to the Assigned Interest; provided that if the Assigned Interest in an Exploratory Well reverts to Apache in accordance with the terms of the Operating Agreement, then Participant shall have no liability or obligation with respect to the plugging and abandonment of such Well and Rooster shall indemnify and hold Participant harmless therefrom. After execution of this Participation Agreement, Rooster shall submit the AFE for the Exploratory Wells by courier, email or facsimile and Participant hereby agrees to promptly execute an original of the AFE and return same. If the Participant fails to return the executed AFE within five (5) business days from receipt of same from Rooster, then Rooster may declare this Participation Agreement to be null and void, and Participant shall have no liability for such termination, the only penalty being the forfeiture of any rights contemplated to be earned herein by Participant. Rooster shall not cash call or otherwise require Participant to pre-pay all or any portion of the costs included in the AFE for either Exploratory Well; provided in the event Rowan cash calls Rooster for any part of the amounts to be paid to

Rowan with respect to an Exploratory Well, then Rooster may cash call Participant for its proportionate share of the amounts being cash called by Rowan, and Participant hereby agrees to pay any invoice for same within fifteen (15) days of the invoice date.

"Casing Point" is defined as that point in time when an Exploratory Well has been drilled to its Objective Depth (as defined below) and appropriate tests and logs have been conducted and the recommendation is made by Rooster to plug and abandon or run and set a production string of casing and attempt a completion on such Exploratory Well. At that point, Participant will be provided verbal or written notification of such an event and recommendation and shall then have twenty-four (24) hours to elect to concur with the recommendation of Rooster or elect an alternative. If Rooster recommends attempting completion in an Exploratory Well and Participant elects to plug and abandon or otherwise fails to concur with a completion recommendation within such twenty-four (24) hour period, then Participant shall not earn or be entitled to the Assigned Interest in such Exploratory Well and thereafter shall only be responsible for its share of costs incurred in such Exploratory Well to such Casing Point election and for plugging and abandonment costs if the applicable Exploratory Well is not successfully completed; if the applicable Exploratory Well is successfully completed and Participant did not participate in such completion, then Participant shall have no liability or obligation for plugging and abandonment costs, and Rooster shall indemnify and hold Participant harmless therefrom.

3.    <u>Exploratory Wells.</u>   The VR 376 A-3 Well shall be drilled to a total depth of approximately 4,230' TVD/7,977' MD or such depths as will be sufficient to test the S-2 sand formation and the VR 376 A-4 Well shall be drilled to a total depth of approximately 6,200' TVD/6,969' MD or such depths as will be sufficient to test the T-3 sand formation (collectively the *"Objective Depths"*).   Rooster represents and warrants that it has obtained, or at the time of commencement of drilling of each of the Exploratory Wells will have obtained, all necessary government approval to drill to the Objective Depths.

The commencement of drilling on any well shall be that point in time when the drilling bit turns in the ground for the drilling of any well contemplated herein.

4.    <u>Substitute Well.</u>   If during the drilling of the Exploratory Wells or any substitute well as provided in this Section 4, mechanical difficulties, heaving shale, rock shale, excessive saltwater flow, practically impenetrable formations or other conditions occur in the hole which would cause a reasonable and prudent operator under the same or similar circumstances to discontinue drilling and to plug and abandon, or plugback and sidetrack, such well, each Party hereto shall have the right, but not the obligation, to commence actual drilling operations on another well or sidetracking operation on such well (hereinafter referred to as the *"Substitute Well"*) at a mutually agreeable location on the Lease within thirty (30) days after the date the drilling rig was released from the last operation on the Exploratory Wells. In such case, if Participant elects not to participate in a Substitute Well, it shall have no obligation for any costs, expenses or liabilities related to such Substitute Well and it shall not earn the Assigned Interest in the Substitute Well. If both Parties make an election to commence actual drilling operations for the

Substitute Well, it shall in all respects be considered as if it were one of the Exploratory Wells (as applicable).

5.   Operator.  Rooster Petroleum, LLC, is currently operator of the Lease and shall continue as Operator of the Lease in accordance with the terms and provisions of the Operating Agreement (as defined in Paragraph 6 hereinafter). Participant hereby agrees to execute appropriate documents, if necessary, designating Rooster Petroleum, LLC, to be operator of the Lease, along with the execution of any other documents required in order to drill the Exploratory Wells and produce same from the Platform.

6.   Operating Agreement.  Operations on the Lease are currently subject to an existing Offshore Operating Agreement effective October 1, 1999 between PetroQuest Energy One, L.L.C., as Operator, and LLOG Exploration & Production Company, as Non-Operators, covering all of OCS-G 14428 Vermilion Block 376 (the *"Operating Agreement"*), a true and correct copy of which is attached hereto as Exhibit "F". Rooster represents that no amendments have been made to the Operating Agreement.. A Ratification of Operating Agreement will not be required, however, the Operating Agreement shall govern all operations contemplated under this Participation Agreement after Casing Point of each of the Exploratory Wells.

7.   Title and Assignment.  Rooster represents and warrants to Participant that Apache Corporation owns an undivided 50% of the operating rights in and to the Exploratory Wells and has elected not to participate in the drilling of the Exploratory Wells and hence upon commencement of operations on the first of the Exploratory Wells, all of Apache Corporation's leasehold operating rights in the Exploratory Wells and title to production therefrom shall be owned and vested in Rooster for as long as the operations on the Exploratory Wells are being conducted or production is obtained subject to the terms of the Operating Agreement. Rooster represents and warrants to Participant that, in addition to the Apache interest, Rooster owns an undivided fifty percent (50%) of the operating rights in and to the Exploratory Wells and the production therefrom. Conditioned on its performance in accordance with the terms hereof, Participant shall be the owner of an undivided twenty five percent (25%) of the operating rights in and to the Exploratory Wells subject to the terms of the Operating Agreement. Upon completion of each Exploratory Well, Rooster shall tender and Participant shall take an assignment of the Assigned Interests in the wellbore of such Exploratory Well as limited by the terms of the Operating Agreement and in particular the provisions of Article 12 thereof. Rooster shall deliver a wellbore assignment that shall convey the Assigned Interest by special warranty by, through and under Rooster Oil & Gas, LLC, but not otherwise, and shall be limited as to warranties in such manner as shall be set forth in the instrument of assignment covering the Assigned Interest (the *"Wellbore Assignment"*) subject only to the burdens, agreements and other items set forth in Exhibit "A" attached hereto and made a part hereof (the *"Permitted Encumbrances"*).  A separate Wellbore Assignment shall be made for each of the Exploratory Wells.  Each Wellbore Assignment will be filed by Rooster in the appropriate public records of the appropriate parish(es) of Louisiana and the records of the Bureau of Ocean Energy Management, Department of the Interior (*"BOEM"*) and they shall be substantially similar to the forms attached hereto and made a part hereof as Exhibit "C-1" and Exhibit "C-2". Each Wellbore Assignment shall be

effective as of the Effective Date.  The net revenue interest attributable to the Assigned Interest is 18.166599% before Payout and 17.58333% after Payout (based upon the net revenue interest attributable to the 6/6ths working interest in the Lease being 72.66636% before Payout as limited in depth (as set out in Exhibit "A" attached hereto) in the wellbore of each of the Exploratory Wells.  At 7:00 a.m. upon the day following the date of recoupment of the non-consent penalties provided for in the Operating Agreement which may or may not happen prior to Payout, Apache Corporation shall be vested with 100% of the Assigned Interest and shall become a Participating Party in the operations for the Exploratory Wells.  At that date, Participant shall not own or be vested with any other rights in the Assigned Interests.

"Payout" is defined in that certain Farmout Agreement effective December 15, 1998, between BHP Billiton Petroleum (Deepwater) Inc. et al, as Farmor, and PetroQuest Energy One, L.L.C., as Farmee.

**Notwithstanding anything to the contrary therein, Rooster represents and warrants to Participant that the Assigned Interest to be conveyed to Participant is no less than the working interest and the attributable net revenue interest set out hereinabove in this Section 6 and is burdened as described in the Permitted Encumbrances in Exhibit "A" attached hereto.  The representations and warranties herein shall survive for the entirety of the period wherein Participant owns or is vested with any of the rights in the Assigned Interests, and for as long thereafter as necessary to protect Participant against any claim, demand, or suit related to the existence of the burdens attributable to the Assigned Interests as listed on Exhibit "A" attached hereto.**

7.  <u>Use of the Platform.</u>    The costs necessary to connect any of the Exploratory Wells to the facilities on the Platform and any modification to the Platform as a result of production from the Exploratory Wells shall be shared and paid proportionately by Rooster, the Participant and the other working interest owners, if any, of the Exploratory Wells. Platform operating and maintenance expenses shall be allocated in proportion to the producing well count during a calendar month as it relates to the total number of wells producing from the Platform during such calendar month.  For purposes of this provision, a producing zone or each completion in a multi-completed well shall be considered as a separate well.  If a separate Production Use Agreement is necessary, Participant agrees to execute an agreement reflecting the terms set forth in this paragraph.

The Parties hereby agree that there shall be as a slot fee of $150,000.00 (6/6ths basis) for each of the Exploratory Wells, or a total of $300,000 to be paid to the joint account owners of the Platform.  Rooster represents and warrants to Participant that no other slot fee or payment in regard to the use of a slot on the platform will be required by Participant in excess of $150,000.00 for each of the Exploratory Wells, reduced proportionally to Participant's Assigned Interest, with any additional amounts required by Apache being payable by Rooster.  The Parties also hereby agree that Participant will not be assigned nor have any ownership in the existing wells, equipment or facilities, including, but not limited to, the Platform, currently on the Lease, and specifically Participant will not be liable to pay any plugging and abandonment or decommissioning

liability, except that it shall be responsible for and pay its proportionate share of any plugging and abandonment liability for the Exploratory Wells if necessary and if an Exploratory Well is plugged and abandoned prior to any interest therein reverting to Apache pursuant to the Operating Agreement.

8.   Assumption.  Participant agrees that the Assigned Interest shall be subject to the terms of the Operating Agreement and the Permitted Encumbrances, and hereby assumes and agrees to pay and fully perform all costs, obligations and liabilities arising from and after the Effective Date of this Participation Agreement in respect of the Assigned Interest attributable to the Exploratory Wells as set out in the AFE made prior to the Effective Date of this Participation Agreement; provided that Participant shall have an election at Casing Point of each Exploratory Well to decline to participate in the completion of such Exploratory Well and if it elects or is deemed to elect not to participate in the completion, Participant shall have no obligation for costs, liabilities and expenses incurred after Casing Point with respect to such Exploratory Well.

9.   Insurance.  Rooster Petroleum, LLC,, as Operator (such term being defined in the Operating Agreement), hereby agrees to carry and maintain for all operations contemplated hereunder at least the insurance provided for in the Operating Agreement and will also purchase insurance to cover the Assigned Interest, unless prior to commencement of operations for the Exploratory Wells Participant elects to carry its own insurance and so notifies Rooster by sending a Certificate of Insurance to evidence its coverage.

10.  Furnishing Information.   Participant and its representatives shall at all times have access, at their sole risk, to the Platform from which the Exploratory Wells are drilled and to all information and samples acquired in connection with the drilling, testing and completion of each Exploratory Well.  Said access shall be at Participant's sole risk, liability and expense, and Participant will be required to notify Rooster prior to accessing the Platform and Participant shall comply with Rooster's safety and environmental policies during such occurrences. As concerns drilling and completion operations on each of the Exploratory Wells, Rooster shall promptly deliver to Participant all information and data related to each of the Exploratory Wells, including, without limitation, (i) daily drilling reports by fax or email, and (ii) all information set forth in Exhibit "D", attached hereto and made a part hereof.

11.  Audit Rights. Participant and its duly authorized representatives shall have access to audit Rooster's records relating to the Exploratory Wells during reasonable business hours and as may be otherwise provided for by the Operating Agreement.

12.  Liability of Parties.   Notwithstanding any provisions hereof, the liabilities of the Parties are several, not joint or collective, and each Party shall be responsible only for its share of the costs and liabilities incurred as provided herein. It is not the intention of the Parties to create, nor shall this Agreement be construed as creating, a mining or other partnership or association (except as provided to the limited extent for tax purposes in Section 13), or to render the Parties liable as partners.

13. <u>Costs of Non-Consent Operation</u>.  Rooster agrees that all of the costs of a type set forth on Schedule 13 to this Agreement will be included in the itemized statement that Rooster will give under Section 12.1.5 of the Operating Agreement with respect to each Exploratory Well.

14. <u>Governing Law</u>.  This Participation Agreement and all instruments executed in accordance with it, and the rights and obligations of the parties hereto shall be governed, construed, and enforced in accordance with the laws of the State of Texas, without regard to rules governing conflict of laws.  Venue for any litigation concerning or related to this Participation Agreement shall be in any state or federal court with jurisdiction located in Harris County, Texas.

If this Participation Agreement is placed in the hands of an attorney for collection of any sums due hereunder, or suit is brought on same by either Party for any reason, or sums due hereunder are collected through bankruptcy or probate proceedings, then Rooster and Participant each agree that there shall be added to the amount due and owing to the prevailing Party in any dispute or litigation all reasonable attorneys' fees and costs incurred in connection with collection and/or litigation.

15. <u>Confidentiality and Press Releases</u>.  Participant shall consult with Rooster with regard to all publicity and other releases it may issue concerning this Participation Agreement and the transactions contemplated hereby and, except as required by applicable law or the applicable rules or regulations of any governmental body or stock exchange, Participant shall not issue any public statement or other release concerning or related to the Exploratory Wells without the prior written consent of Rooster.

16. <u>Severability</u>.  All provisions herein are severable and in the event any one of them shall be held invalid by any court of competent jurisdiction, this Participation Agreement shall be interpreted as if such invalid provision was not contained herein.

17. <u>Captions</u>.  The captions in this Participation Agreement are for convenience of reference only and shall not limit or otherwise affect the construction or interpretation of any provision of this Participation Agreement.

18. <u>Conflict</u>.  If there is any conflict between the terms and provisions of this Participation Agreement and the terms and provisions of the Operating Agreement, the terms of this Participation Agreement shall control.

19. <u>Survival</u>.  This Participation Agreement and the representations, warranties, covenants and agreements contained herein shall survive the consummation of the transactions contemplated herein.

20. <u>Further Assurances</u>.  From and after the date hereof, each of the Parties hereto, without further consideration, shall use its best efforts to execute, deliver and record, or cause to be executed, delivered, and recorded, good and sufficient instruments of conveyance and transfer, and take such other action as may be reasonably required to carry out the purpose of this Participation Agreement.  Failure of any Party to execute and return any

documents or agreements contemplated by this Participation Agreement within the delays provided shall be considered a material breach of this Participation Agreement.

21.  Successors and Assigns.   The terms, covenants, conditions and provisions of this Participation Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective successors and assigns.  Except as specifically provided in this section, any assignment or other transfer by  Participant of all or any portion of  its interest in the Exploratory Wells shall be made only with the express written consent of Rooster (which shall not be unreasonably withheld) and shall be made expressly subject to this Participation Agreement and the terms and provisions hereof.  Within thirty (30) days from receipt of such a written request by Participant for consent to a transfer, Rooster shall respond, and failure to respond within such thirty days (30) shall be deemed a consent to the proposed transfer.    If such consent is given, the assignee or other transferee shall execute and deliver to Rooster an instrument in such form as shall be satisfactory to Rooster pursuant to which such assignee agrees, as to the interest to be so acquired, to assume the obligations of the assignor hereunder and to be bound by all of the terms and provisions of this Participation Agreement, specifically as to the provisions of this Section.  Subsequently, if such consent is given by a Rooster, such assignee shall within thirty (30) days of the execution of the assignment or other transfer, send Rooster, by U.S. Mail, email or facsimile, a copy of such executed and recorded assignment or other transfer, and until receipt of such copy, the assignment or transfer shall not be binding and effective on Rooster. If Rooster does not consent to the transfer proposed by Participant, Participant may nonetheless make such transfer provided that, regardless of such transfer, the Participant will retain liability for all plugging and abandonment obligations accruing under this Participation Agreement after the date of the transfer with respect to the transferred interest. If Rooster does consent to the proposed transfer, the Participant will be relieved of any obligations accruing under this Participation Agreement with respect to the transferred interest after the effective date of the transfer.

22.  Entire Agreement.  This Participation Agreement, including all Exhibits attached hereto, constitutes the entire agreement between the Parties and supersedes all prior agreements, understandings, representations, promises, negotiations and discussions, whether oral or written, of the parties hereto with respect to the subject matter hereof.  No supplement, amendment, alteration, modification, waiver or termination of the terms of this Participation Agreement shall be binding unless evidenced by a written document executed by the Parties.

23.     Notices.  All notices, reports and information to be given pursuant to the provisions of this Participation Agreement shall be given to Rooster and Participant as follows:

Rooster Petroleum, LLC:
16285 Park Ten Place, Suite 120
Houston, TX  77084
Attention:  Kenneth F. Tamplain, Jr.
Title: Vice President-Land & Legal
E-mail:       ktamplain@roosterpetroleum.com
Phone:        (832) 772-6313 ext. 558
Facsimile:    (832) 772-6314
Cell:          (504) 400-3319

Participant:
Implicit Oil & Gas LP
8080 N. Central Expressway
Suite 1250
Dallas, Texas 75206-1881
Attention:  Edmond G. Boutte
E-mail:       eboutte@implicitoilandgas.com
Phone:        (214) 891-8558
Cell:

or to such other representative as either Rooster or Participant may designate in writing to the other.  Such notice shall be deemed to be delivered (i) within seventy-two (72) hours of being placed in the U.S. Mail Service, certified mail, postage prepaid, and/or (ii) upon confirmation of receipt by facsimile transmission or email and/or (iii) upon delivery by a nationally recognized overnight delivery service such as FedEx.

24.     Termination.  In the event that a drilling rig contracted by Rooster is not on location at the Lease to commence drilling the Exploratory Wells on or before March 31, 2012 then the Participant may elect to terminate this Participation Agreement with forty-eight (48) hours notice to Rooster without penalty or cost, other than the forfeiture of rights of the Assigned Interest contemplated herein.

Please indicate your agreement with the foregoing by signing in the space provided below and returning to the undersigned one (1) duplicate original of this Participation Agreement.

Rooster Petroleum, LLC
Rooster Oil & Gas, LLC

By: _____
Kenneth F. Tamplain, Jr.
Vice President — Land & Legal

AGREED TO AND ACCEPTED this 13th day
of February, 2012.

*Participant:*

Implicit Oil & Gas LP
B/K FUNDS GP, LLC

By: _____
Edmond G. Boutte
President — Energy Division

[SIGNATURE PAGE TO PARTICIPATION AGREEMENT FOR
VR 376 A-3 WELL and VR 376 A-4 WELL]

EXHIBIT "A"

Attached to and made a part of that certain Participation Agreement effective January 6, 2012 between Rooster Oil & Gas, LLC, Rooster Petroleum, LLC and Implicit Oil & Gas LP

**The Lease:**

Oil and Gas Lease effective May 1, 1994, bearing Serial No. OCS-G 14428, between the United States of America, as Lessor, and Phillips Petroleum Company and Anadarko Petroleum Corporation, as Lessee, covering all of Block 376, South Addition, OCS Leasing Map, Louisiana Map No. 3B, INSOFAR AND ONLY INSOFAR as the operating rights cover and apply from subsea surface to 9,000' TVD, recorded at Entry #20012745 in the Conveyance Records of Vermilion Parish, Louisiana.

**The Permitted Encumbrances:**

1.  The Lease.
2.  Farmout Agreement dated December 15, 1998 between Anadarko Petroleum Corporation, as Farmor, and PetroQuest Energy, Inc., as Farmee.
3.  Farmout Agreement dated December 15, 1998 between Phillips Petroleum Company, as Farmor, and PetroQuest Energy, Inc., as Farmee.
4.  Farmout Agreement dated December 15, 1998 between BHP Petroleum (Deepwater) Inc., as Farmor, and PetroQuest Energy, Inc., as Farmee.
5.  Participation Agreement dated October 1, 1999 between PetroQuest Energy One, LLC and LLOG Exploration Company, with an Offshore Operating Agreement attached as Exhibit "C" thereto.
6.  Offshore Operating Agreement dated October 1, 1999 between PetroQuest Energy One, LLC, as Operator, and LLOG Exploration Company, as Non-Operator.
7.  An overriding royalty interest reserved in that certain Assignment of Operating Rights in Oil and Gas Lease effective January 25, 2000, between Anadarko Petroleum Corporation, as Assignor, and PetroQuest Energy One, L.L.C., as Assignee, and subject to all the terms and provisions therein, recorded at Entry #2041492 in the Conveyance Records of Vermilion Parish, Louisiana.
8.  An overriding royalty interest reserved in that certain Assignment of Operating Rights in Oil and Gas Lease effective January 25, 2000, between BHP Petroleum (Deepwater) Inc., as Assignor, and PetroQuest Energy One, L.L.C., as Assignee, and subject to all the terms and provisions therein, limited in depth from the subsea surface to 9,000' TVD, recorded at Entry #20414911 in the Conveyance Records of Vermilion Parish, Louisiana, as further clarified in that certain Assignment of Overriding Royalty Interest effective August 1, 2006 between Rooster Oil & Gas, LLC, as Assignor, and BHP Billiton (Deepwater) Petroleum Inc., as Assignee, as recorded at File #20813944 in the Conveyance Records of Vermilion Parish, Louisiana.
9.  An overriding royalty interest reserved in that certain Assignment of Operating Rights in Oil and Gas Lease effective January 25, 2000, between Phillips Petroleum Company, as

Assignor, and PetroQuest Energy One, L.L.C., as Assignee, and subject to all the terms and provisions therein, limited in depth from the subsea surface to 9,000' TVD, recorded at Entry #20414913 in the Conveyance Records of Vermilion Parish, Louisiana, as further clarified in the certain Assignment of Overriding Royalty Interest effective August 1, 2006 between Rooster Oil & Gas, LLC, as Assignor, and ConocoPhillips Company, as Assignee, as recorded at File #20813945 in the Conveyance Records of Vermilion Parish, Louisiana.

10.     Assignment of Operating Rights effective January 28, 2000, between PetroQuest Energy One, L.L.C., as Assignor, and LLOG Exploration & Production Company, as Assignee, whereby Assignor reserved an overriding royalty interest, recorded at Entry #20012749 in the Conveyance Records of Vermilion Parish, Louisiana.

11.     Assignment of Operating Rights dated June 14, 2000, effective February 1, 2000, between PetroQuest Energy One, L.L.C., as Assignor, and PetroQuest Energy, Inc., as Assignee, whereby Assignor reserved an overriding royalty interest, recorded at Entry #20314725 in the Conveyance Records of Vermilion Parish, Louisiana.

12.     Assignment of Operating Rights dated December 18, 2000, effective February 1, 2000, between PetroQuest Energy One, Inc., as Assignor, and PetroQuest Oil & Gas, L.L.C., as Assignee, recorded at Entry #_____ in the Conveyance Records of Vermilion Parish, Louisiana.

13.     An overriding royalty interest conveyed in that certain Assignment of Overriding Royalty effective January 27, 2000, between PetroQuest Energy One, L.L.C., as Assignor, and Victor J. Luszcz, as Assignee, recorded at Entry #20414914 in the Conveyance Records of Vermilion Parish, Louisiana.

14.     An overriding royalty interest conveyed in that certain Assignment of Overriding Royalty effective January 27, 2000, between PetroQuest Energy One, L.L.C., as Assignor, and Donald V. Crider, as Assignee, recorded at Entry #20414915 in the Conveyance Records of Vermilion Parish, Louisiana.

15.     An overriding royalty interest conveyed in that certain Assignment of Overriding Royalty effective January 27, 2000, between PetroQuest Energy One, L.L.C., as Assignor, and Michael A. Scherrer, as Assignee, recorded at Entry #20414916 in the Conveyance Records of Vermilion Parish, Louisiana.

16.     Assignment of Overriding Royalty Interest effective June 25, 1999, between PetroQuest Energy One, L.L.C., as Assignor, and PetroQuest Energy, Inc., as Assignee, recorded in Entry #_____ in the Conveyance Records of Vermilion Parish, Louisiana.

17.     Assignment of Overriding Royalty Interests effective August 1, 2006 between PetroQuest Energy, L.L.C., PetroQuest Oil & Gas, L.L.C., and TDC Energy LLC, as Assignor, and Rooster Oil & Gas, LLC, as Assignee, recorded at Entry #20615194 in the Conveyance Records of Vermilion Parish, Louisiana.

18.     A 25% share of a 0.5% of 8/8ths overriding royalty interest to be in favor of Rooster Oil & Gas, LLC.

19.     Gas Pipeline Right-of-Way OCS-G 22105, Segment No. 12657, coming from Vermilion Block 376 A Platform (OCS-G 14428) and going to Vermilion Block 379 (OCS-G 13606).

20.     Oil Pipeline Right-of-Way OCS-G 21874, Segment No. 12571, coming from Vermilion Block 376 A Platform (OCS-G 14428) and going to Vermilion Block 374 (unleased), as conveyed in that certain Agreement effective August 4, L.L.C. between Equiilon Enterprises LLC d/b/a/ Shell Oil Products US and PetroQuest Energy, L.L.C.

21.     Assignment of Operating Rights effective [upon the commencement of operations for the VR 376 #A-3 or VR 376 #A-4 Wells] between Apache Corporation, as Assignor, and Rooster Petroleum, LLC, as Assignee, limited to the VR 376 #A-3 or VR 376 #A-4 Wells.



END OF EXHIBIT "A"

**EXHIBIT "B"**

Attached to and made a part of that certain Participation Agreement effective January 6, 2012, between Rooster Oil & Gas, LLC and Implicit Oil & Gas LP

[ATTACHED AFE #12101 AND AFE #12102 FOR VR 376 A-3 & A-4 WELLS HERE]

EXHIBIT "C-1"

Attached to and made a part of that certain Participation Agreement dated January 6, 2012, between Rooster Oil & Gas, LLC, and Implicit Oil & Gas LP

WELLBORE ASSIGNMENT
AND BILL OF SALE

[similar changes to be made to Ex. C-2]

[Vermilion 376-Well #A-3]
[OCS-G 14428]

UNITED STATES OF AMERICA          §

OUTER CONTINENTAL SHELF          § KNOW ALL MEN BY THESE PRESENTS:

OFFSHORE LOUISIANA                   §

THAT, **Rooster Oil & Gas, LLC,** a Delaware limited liability company, whose address is 16285 Park Ten Place, Suite 120, Houston, Texas 77084 (hereinafter referred to as *"Assignor"*), for and in consideration of One Thousand and no/100 Dollars and other good and valuable consideration ($1,000.00 & OVC), the receipt and sufficiency which are hereby acknowledged, has transferred, sold, assigned and conveyed, and by these present does hereby TRANSFER, SELL, ASSIGN AND CONVEY unto **Implicit Oil & Gas LP,** a Texas limited partnership, whose address is 8080 N. Central Expressway, Suite 1250, Dallas, Texas 75206-1881 (hereinafter sometimes referred to as *"Assignee"*), an undivided twenty-five percent (25%) working interest and a 18.16659% before Payout and a 17.58333% after Payout net revenue interest (with Payout being described in Items #2,3, and 4 Permitted Encumbrances), subject to the Permitted Encumbrances (as defined below), in and to the OCS-G 14428 Vermilion Area, South Addition, Block 376 #A-3 wellbore, appurtenances thereto and hydrocarbons produced therefrom (*"VR 376 #A-3 Wellbore"*) located on the following described oil and gas lease:

Oil and Gas Lease effective May 1, 1994, bearing Serial No. OCS-G 14428, between the United States of America, as Lessor, and Phillips Petroleum Company and Anadarko Petroleum Corporation, as Lessee, covering all of Block 376, South Addition, OCS Leasing Map, Louisiana Map No. 3B, INSOFAR AND ONLY INSOFAR from subsea surface to 9,000' TVD, recorded at Entry #20012745 in the Conveyance Records of Vermilion Parish, Louisiana. (the *"Lease"*);

The assigned rights and interest in and to the VR 376 #A-3 Wellbore are sometimes hereinafter collectively referred to as the *"Interests"*.

This Wellbore Assignment and Bill of Sale (*"Assignment"*) is made effective as of January 6, 2012 at 12:00 a.m. cst (the *"Effective Date"*) and is expressly subject to the terms and

conditions of the agreements, contracts, assignments and other documents specifically identified and listed on in *Exhibit "A"* attached hereto and made a part hereto insofar and to the extent same pertain to or encumber the Interests (individually and collectively, the *"Permitted Encumbrances"*).

Subject to the Permitted Encumbrances and notwithstanding any provision herein to the contrary, Assignee fully adopts, ratifies, confirms and agrees to comply with the terms, conditions and covenants of the Lease, this Assignment and the Permitted Encumbrances  It is not the intention of Assignor to convey, and for Assignee to own, any of the existing wells, facilities and platforms or structures on the Lease drilled or installed prior to the Effective Date, nor is Assignee liable for any plugging and abandonment or decommissioning obligations related thereto.

Assignee shall release, defend, indemnify and hold harmless Assignor, its partners, and their respective members, shareholders, officers, managers, directors, employees, agents, representatives, affiliates, subsidiaries, insurers, successors and assigns (collectively, the "Assignor Indemnitees") from and against any and all claims, damages, liabilities, losses, causes of action, costs and expenses (including, without limitation, those involving alleged or actual negligence or strict liability and including, without limitation, court costs and attorneys' fees) (collectively, the "Losses") as a result of, arising out of, or related to the ownership of the Interests after the Effective Date but prior to the reversion of any interest to Apache Corporation pursuant to the Operating Agreement, **REGARDLESS OF WHETHER CAUSED OR CONTRIBUTED TO, IN WHOLE OR IN PART, BY THE ALLEGED OR ACTUAL, SOLE, JOINT, COMPARATIVE OR CONCURRENT NEGLIGENCE OR STRICT LIABILITY OF ANY OF THE ASSIGNOR INDEMNITEES.**

Assignor shall release, defend, indemnify and hold harmless Assignee, its partners, and their respective members, shareholders, officers, managers, directors, employees, agents, representatives, affiliates, subsidiaries, insurers, successors and assigns (collectively, the "Assignee Indemnitees") from and against any and all Losses as a result of, arising out of, or related to ownership of the Interests prior to the Effective Date and after the reversion of any interest to Apache Corporation pursuant to the Operating Agreement, **REGARDLESS OF WHETHER CAUSED OR CONTRIBUTED TO, IN WHOLE OR IN PART, BY THE ALLEGED OR ACTUAL, SOLE, JOINT, COMPARATIVE OR CONCURRENT NEGLIGENCE, OR STRICT LIABILITY OF ANY OF THE ASSIGNEE INDEMNITEES.**

THIS ASSIGNMENT AND OTHER DOCUMENTS DELIVERED PURSUANT HERETO AND THE LEGAL RELATIONS BETWEEN THE PARTIES SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF LOUISIANA, WITHOUT GIVING EFFECT TO PRINCIPLES OF CONFLICTS OF LAWS THAT WOULD RESULT IN THE APPLICATION OF THE LAWS OF ANOTHER JURISDICTION. THE PARTIES AGREE TO SUBMIT TO THE EXCLUSIVE VENUE AND JURISDICTION OF COURTS, WHETHER FEDERAL OR STATE, SITUATION WITHIN HARRIS COUNTY, TEXAS, FOR THE RESOLUTION OF ALL CLAIMS AND OTHER LEGAL AND EQUITABLE MATTERS ARISING UNDER THIS ASSIGNMENT.

This Assignment may be executed in any number of identical counterparts, and, upon each Party's execution of a counterpart, each such counterpart shall be effective as to each Party that executes the same whether or not both such Parties execute the same counterpart. When counterparts of this Assignment have been executed by each Party, the signature pages from the various counterparts shall be combined into one composite instrument for all purposes. All counterparts together shall constitute only one Assignment, but each counterpart shall be considered an original.

Subject to any restriction herein, this Assignment shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

This Assignment is expressly subject to the terms and conditions of that certain Operating Agreement effective October 1, 1999 between PetroQuest Energy One, L.L.C., as Operator, and Rooster Oil & Gas, LLC and LLOG Exploration & Production Company, as Non-Operator ("*Operating Agreement*") and that certain Participation Agreement between Assignor, Rooster Petroleum, LLC and Assignee dated effective January 6, 2012 ("*Participation Agreement*"). If there is any conflict between the terms and provisions of the Participation Agreement, Operating Agreement, and the terms and provisions of this Assignment, the terms and provisions of the Participation Agreement shall prevail.

TO HAVE AND TO HOLD the Interests unto Assignee and its successors and assigns forever the Assignor herein binds and obligates itself, its successors and assigns, to warrant and forever defend title to the Interests unto Assignee, its successors and assigns, against every person whomsoever lawfully claiming the same or any part thereof BY, THROUGH OR UNDER ASSIGNOR, BUT NOT OTHERWISE. Except as provided in the immediately preceding sentence, the assignment and conveyance made by this Assignment are made without warranty of title, express, implied, or statutory, but with full right of subrogation and substitution of Assignee, and all persons claiming by, through and under Assignee, to the extent assignable, in and to all warranties of Assignor's predecessors in title and with full subrogation of all rights accruing under the applicable statutes of limitation or prescription under the laws of the state offshore of which the Lease is located and all rights of actions of warranty against all former owners of the Interests.

IN WITNESS WHEREOF, each party hereto has executed this Assignment on the date set forth in its respective acknowledgment, but shall be effective for all purposes as of the Effective Date.

[SIGNATURES ON THE FOLLOWING PAGE]

ASSIGNOR:

WITNESSES:

Rooster Oil & Gas, LLC (#2917)

By: _____
        Kenneth F. Tamplain, Jr.
        Vice President–Land & Legal

Name:_____

Name:_____

ASSIGNEE:

WITNESSES:

Implicit Oil & Gas LP

By: _____
        Edmond G. Boutte
        President – Energy Division

Name: _____

Name: _____

Unofficial Copy Office of Chris Daniel District Clerk

STATE OF TEXAS                §

COUNTY OF HARRIS          §

      On this ____ day of _____, 2012, before me appeared **Kenneth F. Tamplain, Jr.** to me personally known, who, being by me duly sworn (or affirmed) did say that he is the **Vice President-Land & Legal** of **Rooster Oil & Gas, LLC,** a Delaware limited liability company, and that the instrument was signed on behalf of the company and by the authority of the Member and that he acknowledged the instrument to be the free act and deed of the company.


                                        _____
                                        NOTARY PUBLIC IN AND FOR
                                        THE STATE OF TEXAS


STATE OF TEXAS                §

COUNTY OF_____        §

      On this ____ day of _____, 2012, before me appeared **Edmond G. Boutte,** to me personally known, who, being by me duly sworn (or affirmed) did say that he is the duly elected **President – Energy Division** of Implicit Oil & Gas, LP, a Texas limited partnership, and that the instrument was signed on behalf of the company and by the authority of the _____ and that he acknowledged the instrument to be the free act and deed of the partnership.


                                          _____
                                        NOTARY PUBLIC IN AND FOR
                                        THE STATE OF TEXAS

EXHIBIT "A"

Attached to and made a part of that certain Wellbore Assignment and
Bill of Sale effective January 6, 2012 between Rooster Oil & Gas,
LLC, as Assignor, and Implicit Oil & Gas LP, as Assignee.


VR 376 #A-3 Well

**PERMITTED ENCUMBRANCES:**

1.      All of the applicable rules, regulations, or laws of the federal agency or body having
jurisdiction over the Lease;
2.      Farmout Agreement dated December 15, 1998 between Anadarko Petroleum
Corporation, as Farmor, and PetroQuest Energy, Inc., as Farmee.
3.      Farmout Agreement dated December 15, 1998 between Phillips Petroleum Company, as
Farmor, and PetroQuest Energy, Inc., as Farmee.
4.      Farmout Agreement dated December 15, 1998 between BHP Petroleum (Deepwater)
Inc., as Farmor, and PetroQuest Energy, Inc., as Farmee.
5.      Participation Agreement dated October 1, 1999 between PetroQuest Energy One, LLC
and LLOG Exploration Company, with an Offshore Operating Agreement attached as Exhibit
"C" thereto.
6.      Offshore Operating Agreement dated October 1, 1999 between PetroQuest Energy One,
LLC, as Operator, and LLOG Exploration Company, as Non-Operator.
7.      An overriding royalty interest reserved in that certain Assignment of Operating Rights in
Oil and Gas Lease effective January 25, 2000, between Anadarko Petroleum Corporation, as
Assignor, and PetroQuest Energy One, L.L.C., as Assignee, and subject to all the terms and
provisions therein, recorded at Entry #2041492 in the Conveyance Records of Vermilion Parish,
Louisiana.
8.      An overriding royalty interest reserved in that certain Assignment of Operating Rights in
Oil and Gas Lease effective January 25, 2000, between BHP Petroleum (Deepwater) Inc., as
Assignor, and PetroQuest Energy One, L.L.C., as Assignee, and subject to all the terms and
provisions therein, limited in depth from the subsea surface to 9,000' TVD, recorded at Entry
#20414911 in the Conveyance Records of Vermilion Parish, Louisiana, as further clarified in
that certain Assignment of Overriding Royalty Interest effective August 1, 2006 between Rooster
Oil & Gas, LLC, as Assignor, and BHP Billiton (Deepwater) Petroleum Inc., as Assignee, as
recorded at File #20813944 in the Conveyance Records of Vermilion Parish, Louisiana.
9.      An overriding royalty interest reserved in that certain Assignment of Operating Rights in
Oil and Gas Lease effective January 25, 2000, between Phillips Petroleum Company, as
Assignor, and PetroQuest Energy One, L.L.C., as Assignee, and subject to all the terms and
provisions therein, limited in depth from the subsea surface to 9,000' TVD, recorded at Entry
#20414913 in the Conveyance Records of Vermilion Parish, Louisiana, as further clarified in the
certain Assignment of Overriding Royalty Interest effective August 1, 2006 between Rooster Oil
& Gas, LLC, as Assignor, and ConocoPhillips Company, as Assignee, as recorded at File
#20813945 in the Conveyance Records of Vermilion Parish, Louisiana.
10.     Assignment of Operating Rights effective January 28, 2000, between PetroQuest Energy
One, L.L.C., as Assignor, and LLOG Exploration & Production Company, as Assignee, whereby

Assignor reserved an overriding royalty interest, recorded at Entry #20012749 in the Conveyance Records of Vermilion Parish, Louisiana.

11.     Assignment of Operating Rights dated June 14, 2000, effective February 1, 2000, between PetroQuest Energy One, L.L.C., as Assignor, and PetroQuest Energy, Inc., as Assignee, whereby Assignor reserved an overriding royalty interest, recorded at Entry #20314725 in the Conveyance Records of Vermilion Parish, Louisiana.

12.     Assignment of Operating Rights dated December 18, 2000, effective February 1, 2000, between PetroQuest Energy One, Inc., as Assignor, and PetroQuest Oil & Gas, L.L.C., as Assignee, recorded at Entry #_____ in the Conveyance Records of Vermilion Parish, Louisiana.

13.     An overriding royalty interest conveyed in that certain Assignment of Overriding Royalty effective January 27, 2000, between PetroQuest Energy One, L.L.C., as Assignor, and Victor J. Luszcz, as Assignee, recorded at Entry #20414914 in the Conveyance Records of Vermilion Parish, Louisiana.

14.     An overriding royalty interest conveyed in that certain Assignment of Overriding Royalty effective January 27, 2000, between PetroQuest Energy One, L.L.C., as Assignor, and Donald V. Crider, as Assignee, recorded at Entry #20414915 in the Conveyance Records of Vermilion Parish, Louisiana.

15.     An overriding royalty interest conveyed in that certain Assignment of Overriding Royalty effective January 27, 2000, between PetroQuest Energy One, L.L.C., as Assignor, and Michael A. Scherrer, as Assignee, recorded at Entry #20414916 in the Conveyance Records of Vermilion Parish, Louisiana.

16.     Assignment of Overriding Royalty Interest effective June 25, 1999, between PetroQuest Energy One, L.L.C., as Assignor, and PetroQuest Energy, Inc., as Assignee, recorded in Entry #_____ in the Conveyance Records of Vermilion Parish, Louisiana.

17.     Assignment of Overriding Royalty Interests effective August 1, 2006 between PetroQuest Energy, L.L.C., PetroQuest Oil & Gas, L.L.C., and TDC Energy LLC, as Assignor, and Rooster Oil & Gas, LLC, , as Assignee, recorded at Entry #20615194 in the Conveyance Records of Vermilion Parish, Louisiana.

18.     A 25% share of a 0.5% of 8/8ths overriding royalty interest to be in favor of Rooster Oil & Gas, LLC.

19.     Gas Pipeline Right-of-Way OCS-G 22105, Segment No. 12657, coming from Vermilion Block 376 A Platform (OCS-G 14428) and going to Vermilion Block 379 (OCS-G 13606).

20.     Oil Pipeline Right-of-Way OCS-G 21874, Segment No. 12571, coming from Vermilion Block 376 A Platform (OCS-G 14428) and going to Vermilion Block 374 (unleased), as conveyed in that certain Agreement effective August 4, L.L.C. between Equiilon Enterprises LLC d/b/a/ Shell Oil Products US and PetroQuest Energy, L.L.C.

21.     Assignment of Operating Rights effective [upon the commencement of operations for the VR 376 #A-3 or VR 376 #A-4 Wells] between Apache Corporation, as Assignor, and Rooster Petroleum, LLC, as Assignee, limited to the VR 376 #A-3 or VR 376 #A-4 Wells.


END OF EXHIBIT "A"

EXHIBIT "C-2"

Attached to and made a part of that certain Participation Agreement dated January 6, 2012, between Rooster Oil & Gas, LLC, and Implicit Oil & Gas LP

## WELLBORE ASSIGNMENT
## AND BILL OF SALE

[Vermilion 376-Well #A-4]
[OCS-G 14428]

UNITED STATES OF AMERICA   §

OUTER CONTINENTAL SHELF   § KNOW ALL MEN BY THESE PRESENTS:

OFFSHORE LOUISIANA   §

THAT, **Rooster Oil & Gas, LLC,** a Delaware limited liability company, whose address is 16285 Park Ten Place, Suite 120, Houston, Texas 77084 (hereinafter referred to as *"Assignor"*), for and in consideration of One Thousand and no/100 Dollars and other good and valuable consideration ($1,000.00 & OVC), the receipt and sufficiency which are hereby acknowledged, has transferred, sold, assigned and conveyed, and by these present does hereby TRANSFER, SELL, ASSIGN AND CONVEY unto **Implicit Oil & Gas LP,** a Texas limited partnership, whose address is 8080 N. Central Expressway, Suite 1250, Dallas, Texas 75206-1881 (hereinafter sometimes referred to as *"Assignee"*), Assignee an undivided 25% working interest and a 18.04159% before payout and a 17.45833% after payout net revenue interest (with payout being described in Items #2,3, and 4 Permitted Encumbrances), subject to the Permitted Encumbrances (as defined below), in and to the OCS-G 14428 Vermilion Area, South Addition, Block 376 #A-4 wellbore, appurtenances thereto and hydrocarbons produced therefrom (*"VR 376 #A-4 Wellbore"*) located on the following described oil and gas lease:

Oil and Gas Lease effective May 1, 1994, bearing Serial No. OCS-G 14428, between the United States of America, as Lessor, and Phillips Petroleum Company and Anadarko Petroleum Corporation, as Lessee, covering all of Block 376, South Addition, OCS Leasing Map, Louisiana Map No. 3B, INSOFAR AND ONLY INSOFAR from subsea surface to 9,000' TVD, recorded at Entry #20012745 in the Conveyance Records of Vermilion Parish, Louisiana. (the *"Lease"*);

The assigned rights and interest in and to the VR 376 #A-4 Wellbore are sometimes hereinafter collectively referred to as the *"Interests"*.

This Wellbore Assignment and Bill of Sale (*"Assignment"*) is made effective as of January 6, 2012 at 12:00 a.m. cst (the *"Effective Date"*) and is expressly subject to the terms and

conditions of the agreements, contracts, assignments and other documents specifically identified and listed on in *Exhibit "A"* attached hereto and made a part hereto insofar and to the extent same pertain to or encumber the Interests (individually and collectively, the *"Permitted Encumbrances"*).

Subject to the Permitted Encumbrances and notwithstanding any provision herein to the contrary, Assignee fully adopts, ratifies, confirms and agrees to comply with the terms, conditions and covenants of the Lease, this Assignment and the Permitted Encumbrances, and expressly assumes, and agrees to bear and pay for its share of, the costs, risks, expenses, obligations and liabilities accruing or arising on and subsequent to the Effective Date in connection with this Assignment and the Permitted Encumbrances, insofar as each of same pertains to the Interests, including without limitation, the responsibility for the plugging and abandonment of the VR 376 #A-4 Wellbore and removal and salvage of facilities and equipment associated with and/or installed on the Interests, including, but not limited to, relevant seafloor damages and restorations. It is not the intention of Assignor to convey, and for Assignee to own, any of the existing wells, facilities and platforms or structures on the Lease drilled or installed prior to the Effective Date, nor is Assignee liable for any plugging and abandonment obligations related thereto.

Except as otherwise provided in any one or more of the Permitted Encumbrances, any assignment or other transfer of all or any portion of the Interest shall be made only with the express written consent of Assignor and shall be made expressly subject to this Wellbore Assignment and the terms and provisions hereof. Within thirty(30) days from receipt of such a written request by Assignee its assigns, Assignor shall respond. Such consent shall not be unreasonable withheld. If such consent is given, the assignee or other transferee shall execute and deliver to Assignor an instrument in such form as shall be satisfactory to Assignor pursuant to which such assignee agrees, as to the interest to be so acquired, to assume the obligations of the Assignor hereunder and to be bound by all of the terms and provisions of this Assignment, specifically as to the provisions of this Section. Subsequently, if such consent is given by Assignor, such assignee shall within thirty (30) days of the execution of the assignment or other transfer, send Assignor written notification by U.S. Mail, email or facsimile, a copy of such assignment or other transfer to be binding and effective on Assignor. Notwithstanding anything to the contrary contained herein, any assignment of all or a portion of the Interest as consented to shall not relieve Assignee or its assigns of its obligations under this Assignment.

Assignee shall release, defend, indemnify and hold harmless Assignor, its partners, and their respective members, shareholders, officers, managers, directors, employees, agents, representatives, affiliates, subsidiaries, insurers, successors and assigns (collectively, the "Assignor Indemnitees") from and against any and all claims, damages, liabilities, losses, causes of action, costs and expenses (including, without limitation, those involving alleged or actual negligence or strict liability and including, without limitation, court costs and attorneys' fees) (collectively, the "Losses") as a result of, arising out of, or related to the ownership of the Interests after the Effective Date, **REGARDLESS OF WHETHER CAUSED OR CONTRIBUTED TO, IN WHOLE OR IN PART, BY THE ALLEGED OR ACTUAL, SOLE, JOINT, COMPARATIVE OR CONCURRENT NEGLIGENCE OR STRICT LIABILITY OF ANY OF THE ASSIGNOR INDEMNITEES.**

Assignor shall release, defend, indemnify and hold harmless Assignee, its partners, and their respective members, shareholders, officers, managers, directors, employees, agents, representatives, affiliates, subsidiaries, insurers, successors and assigns (collectively, the "Assignee Indemnitees") from and against any and all Losses as a result of, arising out of, or related to ownership of the Interests prior to the Effective Date, **REGARDLESS OF WHETHER CAUSED OR CONTRIBUTED TO, IN WHOLE OR IN PART, BY THE ALLEGED OR ACTUAL, SOLE, JOINT, COMPARATIVE OR CONCURRENT NEGLIGENCE OR STRICT LIABILITY OF ANY OF THE ASSIGNEE INDEMNITEES.**

THIS ASSIGNMENT AND OTHER DOCUMENTS DELIVERED PURSUANT HERETO AND THE LEGAL RELATIONS BETWEEN THE PARTIES SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS, WITHOUT GIVING EFFECT TO PRINCIPLES OF CONFLICTS OF LAWS THAT WOULD RESULT IN THE APPLICATION OF THE LAWS OF ANOTHER JURISDICTION. THE PARTIES AGREE TO SUBMIT TO THE EXCLUSIVE VENUE AND JURISDICTION OF COURTS, WHETHER FEDERAL OR STATE, SITUATION WITHIN HARRIS COUNTY, TEXAS, FOR THE RESOLUTION OF ALL CLAIMS AND OTHER LEGAL AND EQUITABLE MATTERS ARISING UNDER THIS ASSIGNMENT.

This Assignment may be executed in any number of identical counterparts, and, upon each Party's execution of a counterpart, each such counterpart shall be effective as to each Party that executes the same whether or not both such Parties execute the same counterpart. When counterparts of this Assignment have been executed by each Party, the signature pages from the various counterparts shall be combined into one composite instrument for all purposes. All counterparts together shall constitute only one Assignment, but each counterpart shall be considered an original.

Subject to any restriction herein, this Assignment shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

This Assignment is expressly subject to the terms and conditions of that certain Operating Agreement effective October 1, 1999 between PetroQuest Energy One, L.L.C., as Operator, and Rooster Oil & Gas, LLC and LLOG Exploration & Production Company, as Non-Operator (*"Operating Agreement"*) and that certain Participation Agreement between Assignor, Rooster Petroleum, LLC and Assignee dated effective January 6, 2012 (*"Participation Agreement"*). If there is any conflict between the terms and provisions of the Participation Agreement, Operating Agreement, and the terms and provisions of this Assignment, the terms and provisions of the Participation Agreement shall prevail.

TO HAVE AND TO HOLD the Interests unto Assignee and its successors and assigns forever the Assignor herein binds and obligates itself, its successors and assigns, to warrant and forever defend title to the Interests unto Assignee, its successors and assigns, against every person whomsoever lawfully claiming the same or any part thereof BY, THROUGH OR UNDER ASSIGNOR, BUT NOT OTHERWISE. Except as provided in the immediately preceding sentence, the assignment and conveyance made by this Assignment are made without warranty of title, express, implied, or statutory, but with full right of subrogation and substitution

of Assignee, and all persons claiming by, through and under Assignee, to the extent assignable, in and to all warranties of Assignor's predecessors in title and with full subrogation of all rights accruing under the applicable statutes of limitation or prescription under the laws of the state offshore of which the Lease is located and all rights of actions of warranty against all former owners of the Interests.

      IN WITNESS WHEREOF, each party hereto has executed this Assignment on the date set forth in its respective acknowledgment, but shall be effective for all purposes as of the Effective Date.

ASSIGNOR:

WITNESSES:

Rooster Oil & Gas, LLC (#2917)

By: _____
Kenneth F. Tamplain, Jr.
Vice President–Land & Legal

Name:_____

Name:_____

ASSIGNEE:

WITNESSES:

Implicit Oil & Gas LP

By: _____
Edmond G. Boutte
President – Energy Division

Name:_____

Name:_____

STATE OF TEXAS §

COUNTY OF HARRIS §

On this _____ day of January, 2012, before me appeared **Kenneth F. Tamplain, Jr.** to me personally known, who, being by me duly sworn (or affirmed) did say that he is the **Vice President-Land & Legal** of **Rooster Oil & Gas, LLC,** a Delaware limited liability company, and that the instrument was signed on behalf of the company and by the authority of the Member and that he acknowledged the instrument to be the free act and deed of the company.

_____
NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

STATE OF TEXAS §

COUNTY OF_____ §

On this _____ day of January, 2012, before me appeared **Edmond G. Boutte,** to me personally known, who, being by me duly sworn (or affirmed) did say that he is the duly elected **President** of **Implicit Oil & Gas LP,** a Texas limited partnership, and that the instrument was signed on behalf of the company and by the authority of the _____ and that he acknowledged the instrument to be the free act and deed of the partnership.

_____
NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

EXHIBIT "A"

Attached to and made a part of that certain Wellbore Assignment and Bill of Sale effective January 6, 2012 between Rooster Oil & Gas, LLC, as Assignor, and Implicit Oil & Gas LP, as Assignee.

VR 376 #A-4 Well

**PERMITTED ENCUMBRANCES:**

1.    All of the applicable rules, regulations, or laws of the federal agency or body having jurisdiction over the Lease;

2.    Farmout Agreement dated December 15, 1998 between Anadarko Petroleum Corporation, as Farmor, and PetroQuest Energy, Inc., as Farmee.

3.    Farmout Agreement dated December 15, 1998 between Phillips Petroleum Company, as Farmor, and PetroQuest Energy, Inc., as Farmee.

4.    Farmout Agreement dated December 15, 1998 between BHP Petroleum (Deepwater) Inc., as Farmor, and PetroQuest Energy, Inc., as Farmee.

5.    Participation Agreement dated October 1, 1999 between PetroQuest Energy One, LLC and LLOG Exploration Company, with an Offshore Operating Agreement attached as Exhibit "C" thereto.

6.    Offshore Operating Agreement dated October 1, 1999 between PetroQuest Energy One, LLC, as Operator, and LLOG Exploration Company, as Non-Operator.

7.    An overriding royalty interest reserved in that certain Assignment of Operating Rights in Oil and Gas Lease effective January 25, 2000, between Anadarko Petroleum Corporation, as Assignor, and PetroQuest Energy One, L.L.C., as Assignee, and subject to all the terms and provisions therein, recorded at Entry #2041492 in the Conveyance Records of Vermilion Parish, Louisiana.

8.    An overriding royalty interest reserved in that certain Assignment of Operating Rights in Oil and Gas Lease effective January 25, 2000, between BHP Petroleum (Deepwater) Inc., as Assignor, and PetroQuest Energy One, L.L.C., as Assignee, and subject to all the terms and provisions therein, limited in depth from the subsea surface to 9,000' TVD, recorded at Entry #20414911 in the Conveyance Records of Vermilion Parish, Louisiana, as further clarified in that certain Assignment of Overriding Royalty Interest effective August 1, 2006 between Rooster Oil & Gas, LLC, as Assignor, and BHP Billiton (Deepwater) Petroleum Inc., as Assignee, as recorded at File #20813944 in the Conveyance Records of Vermilion Parish, Louisiana.

9.    An overriding royalty interest reserved in that certain Assignment of Operating Rights in Oil and Gas Lease effective January 25, 2000, between Phillips Petroleum Company, as Assignor, and PetroQuest Energy One, L.L.C., as Assignee, and subject to all the terms and provisions therein, limited in depth from the subsea surface to 9,000' TVD, recorded at Entry #20414913 in the Conveyance Records of Vermilion Parish, Louisiana, as further clarified in the certain Assignment of Overriding Royalty Interest effective August 1, 2006 between Rooster Oil & Gas, LLC, as Assignor, and ConocoPhillips Company, as Assignee, as recorded at File #20813945 in the Conveyance Records of Vermilion Parish, Louisiana.

10.     Assignment of Operating Rights effective January 28, 2000, between PetroQuest Energy One, L.L.C., as Assignor, and LLOG Exploration & Production Company, as Assignee, whereby Assignor reserved an overriding royalty interest, recorded at Entry #20012749 in the Conveyance Records of Vermilion Parish, Louisiana.

11.     Assignment of Operating Rights dated June 14, 2000, effective February 1, 2000, between PetroQuest Energy One, L.L.C., as Assignor, and PetroQuest Energy, Inc., as Assignee, whereby Assignor reserved an overriding royalty interest, recorded at Entry #20314725 in the Conveyance Records of Vermilion Parish, Louisiana.

12.     Assignment of Operating Rights dated December 18, 2000, effective February 1, 2000, between PetroQuest Energy One, Inc., as Assignor, and PetroQuest Oil & Gas, L.L.C., as Assignee, recorded at Entry #_____ in the Conveyance Records of Vermilion Parish, Louisiana.

13.     An overriding royalty interest conveyed in that certain Assignment of Overriding Royalty effective January 27, 2000, between PetroQuest Energy One, L.L.C., as Assignor, and Victor J. Luszcz, as Assignee, recorded at Entry #20414914 in the Conveyance Records of Vermilion Parish, Louisiana.

14.     An overriding royalty interest conveyed in that certain Assignment of Overriding Royalty effective January 27, 2000, between PetroQuest Energy One, L.L.C., as Assignor, and Donald V. Crider, as Assignee, recorded at Entry #20414915 in the Conveyance Records of Vermilion Parish, Louisiana.

15.     An overriding royalty interest conveyed in that certain Assignment of Overriding Royalty effective January 27, 2000, between PetroQuest Energy One, L.L.C., as Assignor, and Michael A. Scherrer, as Assignee, recorded at Entry #20414916 in the Conveyance Records of Vermilion Parish, Louisiana.

16.     Assignment of Overriding Royalty Interest effective June 25, 1999, between PetroQuest Energy One, L.L.C., as Assignor, and PetroQuest Energy, Inc., as Assignee, recorded in Entry #_____ in the Conveyance Records of Vermilion Parish, Louisiana.

17.     Assignment of Overriding Royalty Interests effective August 1, 2006 between PetroQuest Energy, L.L.C., PetroQuest Oil & Gas, L.L.C., and TDC Energy LLC, as Assignor, and Rooster Oil & Gas, LLC, , as Assignee, recorded at Entry #20615194 in the Conveyance Records of Vermilion Parish, Louisiana.

18.     A 25% share of a 0.03% of 8/8ths overriding royalty interest to be in favor of Rooster Oil & Gas, LLC.

19.     Gas Pipeline Right-of-Way OCS-G 22105, Segment No. 12657, coming from Vermilion Block 376 A Platform (OCS-G 14428) and going to Vermilion Block 379 (OCS-G 13606).

20.     Oil Pipeline Right-of-Way OCS-G 21874, Segment No. 12571, coming from Vermilion Block 376 A Platform (OCS-G 14428) and going to Vermilion Block 374 (unleased), as conveyed in that certain Agreement effective August 4, L.L.C. between Equiilon Enterprises LLC d/b/a/ Shell Oil Products US and PetroQuest Energy, L.L.C.

21.     Assignment of Operating Rights effective [upon the commencement of operations for the VR 376 #A-3 or VR 376 #A-4 Wells] between Apache Corporation, as Assignor, and Rooster Petroleum, LLC, as Assignee, limited to the VR 376 #A-3 or VR 376 #A-4 Wells.

<br>

END OF EXHIBIT "A"

EXHIBIT "D"

Attached to and made a part of that certain

Participation Agreement dated January 12, 2012

between Rooster Petroleum, LLC and

Implicit Oil & Gas, L.P.

<u>Data Requirements</u>

The following information should be mailed to:

Implicit Oil & Gas, LP

8080 North Central Expressway, Suite 1250
Dallas, Texas 75206-1881
Attention: Ed Boutte

A.    One copy of well prognosis and drilling program.
B.    One copy of all governmental regulatory agency filings (applications, reports, tests, etc.),
       permits received, and other correspondence.
C.    One copy of drilling contract.

<u>Daily Reports (including any mud report, directional surveys, daily and cumulative costs, etc.)</u>

Ed Boutte            eboutte@implicitoilandgas.com

<u>Log Run Notification (24 hour notice requested) and Drilling Operations:</u>
(decision on deepening, sidetracking, casing point elections, abandonments, etc.)

Ed Boutte
Office:        (214) 891-8558
Telecopier:    (214) 891-8122
Home:          (214) 596-5671
Cell:          (214) 244-7880

<u>Log Prints, Etc. (as applicable) to Farmor:</u>

Daily Mud and MWD Logs    1  Print
Final Mud Logs            2  Prints
Core Analysis             2  Prints
Lognet Prints             1  Print
Field Prints              2  Prints
Final Prints              2  Prints

2013-17984 / Court: 165

# EXHIBIT "B"

Unofficial Copy Office of Chris Daniel District Clerk

## OPERATING AGREEMENT

THIS AGREEMENT is made effective the 1st day of October, 1999, by and between PetroQuest Energy One, L.L.C. ("PetroQuest") LLOG Exploration & Production Company ("LLOG Exploration & Production Company") herein referred to collectively as "Parties" and individually as "Party".

### W I T N E S S E T H:

WHEREAS the Parties are owners of the oil and gas leases identified in Exhibit "A" and desire to explore, develop, produce, and operate said lease(s),

NOW THEREFORE, for and in consideration of the sum of ten dollars ($10.00) and other good and valuable consideration, including the premises and the mutual covenants and agreements contained herein, it is agreed as follows:

### ARTICLE 1
### APPLICATION

1.1     Application.   Concurrent with the effective date of this Agreement, the Parties hereto form a Contract Area (as defined below) and agree that operations on such Contract Area shall apply separately to each lease included within the Contract Area.

### ARTICLE 2
### DEFINITIONS

2.1     Affiliate.  Any person, corporation, partnership, limited partnership, or legal entity, whether of a similar or dissimilar nature, which (a) controls, either directly or indirectly, a Party, or (b) is controlled, either directly or indirectly, by such Party, or (c) is controlled, either directly or indirectly, by a person or entity which directly or indirectly controls such Party.  "Control" means the ownership (or the right to exercise or direct) fifty percent (50%) or more of the voting rights in the appointment of directors of such company, or fifty percent (50%) or more of the interests in the partnership or other entity.

2.2     Area of Mutual Interest (AMI).  As defined and set forth in 26.1 hereof.

2.3     Contract Area.  The acreage subject to this Operating Agreement as identified in Exhibit "A"

2.4     Development Operations.   Operations on the Contract Area other than Exploratory Operations as defined in Section 2.6 below, including operations conducted off the Contract Area for the purpose of development or production of hydrocarbons under the Contract Area.

2.5     Development Well.  Any well proposed as a Development Operation.

2.6 <u>Exploratory Operations</u>.  Operations within the Contract Area:

    (a)    to a proposed objective zone, horizon, or formation which does not have a Producible Well and all activities necessary for the accomplishment of such drilling up to, but not including, the election following the Operator's recommendation in Section 10.6 below; or

    (b)    to a proposed objective zone, horizon, or formation which does have one (1) or more Producible Well(s), but such objective will be penetrated at a location which all of the Participating Parties in the preexisting Producible Well(s) agree, at the time that the proposed Exploratory Well is approved, will be in a totally separate reservoir or will not drain or produce reserves that would be recovered by the preexisting Producible Well(s), and all activities necessary for the accomplishment of such drilling up to, but not including, the election following the Operator's recommendation in Section 10.6 below; or

2.7 <u>Exploratory Well</u>.  Any well drilled as an Exploratory Operation.

2.8 <u>Facility(ies)</u>.  All equipment and piping beyond the wellhead connections (including pipeline(s) and/or flowline(s) to separate processing facilities) acquired pursuant to this Agreement necessary to establish initial production on any Exploratory or Development Well operation, excluding Platforms and excluding pipelines used to transport production from a Lease or processing site to shore.

2.9 <u>Joint Account</u>.  The combined interests of the Parties in the Contract Area now or hereafter subject to this Agreement.

2.10 <u>Lease</u>.  Individually, each of the offshore oil and gas leases which are described in Exhibit "A" attached hereto, to the extent that such leases authorize exploration, development, and production activities on lands contained within the Contract Area.

2.11 <u>Non-Consent Operations</u>.  Exploratory or Development Operations conducted by fewer than all Parties.

2.12 <u>Non-Consent Well</u>.  An Exploratory or Development Well which is drilled by fewer than all Parties and with respect to which no reversion of interest has taken place pursuant to Article 12.

2.13 <u>Non-Operator</u>.  Any Party to this Agreement other than the Operator.

2.14 <u>Non-Participating Party</u>.  Any Party other than a Participating Party.

2.15 <u>Non-Participating Party's Share</u>.  The Participating Interest a Non-Participating Party would have had if all Parties had participated in the operation.

2.16 <u>Operator</u>.  The Party designated under this Agreement to conduct Exploratory and Development Operations.

2.17 <u>Participating Interest</u>.  A Participating Party's percentage of participation in an operation conducted, or in a Platform, well, or Facility owned, pursuant to this Agreement.

2.18 <u>Participating Party</u>.  A Party who joins in an operation, pays its portion of the cost and expense of the operation, and is entitled to its proportionate part of the benefits of the operation pursuant to the terms of this Agreement.

2.19  Platform.  A drilling or production platform, caisson or well protector, or similar structure.

2.20  Producible Well.  A well producing oil or gas, or, if not producing oil or gas, a well determined to be capable of producing oil or gas in paying quantities pursuant to any applicable order issued by appropriate governmental authority; however, any well shall be considered a Producible Well if so determined by two (2) or more participating Parties with a combined working interest of 50% of said well, whether or not said well is plugged and abandoned. Each separate completion in a Producible Reservoir shall be considered a Producible Well.

2.21  Producible Reservoir.  Based on electric log data, core analysis data, a drill stem test, a wire line formation test, or any combination of these, an accumulation of oil or gas, or both, separated from and not in oil or gas communication with any other accumulation and having rock properties indicating it to be capable of hydrocarbon production in quantities sufficient to yield a return in excess of the costs of equipping, completing, and operating it, including allocated costs for a Platform, Facilities, and their operations, as determined by the affirmative vote of two (2) or more Parties having a combined Participating interest of fifty percent (50%) or more.  In addition, any accumulation of oil or gas, or both, within the Contract Area shall be designated a Producible Reservoir upon the approval of a Platform to produce such oil or gas.

2.22  Sidetrack(ing).  Directionally drilling by intentionally deviating a well bore to a target bottomhole location other than that target bottomhole location to which such well bore would have penetrated absent such deviation.  Operations undertaken to straighten the hole or to drill around junk in the hole resulting from other mechanical difficulties shall not be considered as a sidetrack or sidetracking.

2.23  Subsequent Facility(ies).  Those Facilities, excluding Platforms, which are proposed subsequent, or in addition, to the Facilities.

2.24  Working Interest.  The ownership of each Party in and to the Lease as set forth in Exhibit "A".

ARTICLE 3

EXHIBITS

3.1  Exhibits. Attached hereto are the following exhibits which are incorporated herein by reference:

3.1.1    Exhibit "A".    Description of Leases, Interests of the Parties and Designated Representatives.

3.1.2.   Exhibit "A-1".  Area of Mutual Interest

3.1.3    Exhibit "B".    Insurance Requirements.

Unofficial Copy Office of Harris County District Clerk

| 3.1.4 | Exhibit "C". | Accounting Procedure. |
| 3.1.5 | Exhibit "D". | Non-Discrimination and Certification of Non-Segregated Facilities |
| 3.1.6 | Exhibit "E". | Gas Balancing Agreement |
| 3.1.7 | Exhibit "F" | Tax Provisions |
| 3.1.8 | Exhibit "G" | Memorandum of Operating Agreement and Financing Statement |

## ARTICLE 4
## OPERATOR

4.1     Operator. PetroQuest Energy One, L.L.C. is hereby designated as Operator of all operations in which it elects to be a Participating Party.

4.2     Resignation or Removal of Operator.  Operator may resign at any time by giving written notice thereof to Non-Operators.  If Operator terminates its legal existence or is no longer capable of serving as Operator, Operator shall give prompt notice of such event and regardless of Operator's compliance with such notice requirement, shall be deemed to have resigned without any action by Non-Operators, except for the selection of a successor.  Operator may be removed only for good cause, or if it reduces its interest in the contract area to less than 25% by the affirmative vote of Non-Operators owning a majority interest based on ownership as shown on Exhibit "A" remaining after excluding the voting interest of Operator; such vote shall not be deemed effective until a written notice has been delivered to the Operator by a Non-Operator detailing the alleged grounds for removal and Operator has failed to cure same within thirty (30) days from its receipt of the notice or, if the alleged grounds concern an operation then being conducted, within forty-eight (48) hours of its receipt of the notice.  For purposes hereof, "good cause" shall include gross negligence or willful misconduct, or a substantial breach of a material provision of this Agreement, or material failure or inability to perform its obligations under this Agreement.

Such resignation or removal shall not become effective until 7:00 o'clock A.M. on the first day of the calendar month following the expiration of ninety (90) days after the giving of i) notice of resignation by Operator or ii) the end of the aforesaid thirty (30) day period after notice by the Non-Operators to remove Operator, unless a successor Operator has been selected and assumes the duties of Operator at an earlier date.  Operator, after the effective date of resignation or removal shall be bound by the terms hereof as a Non-Operator.  A change of a corporate name or structure of Operator or transfer of Operator's interest to any single subsidiary, parent or successor corporation shall not be the basis for removal of Operator.

4.3   <u>Selection of Successor</u>.  Upon resignation or removal of Operator, a successor Operator shall be selected by an affirmative vote of the Parties having a combined majority Working Interest, however, if the removed or resigned Operator (or its assignee or transferee) fails to vote or votes only to succeed itself, the successor Operator shall be selected by an affirmative vote of the Parties having a combined Working Interest of fifty percent (50%) or more of the remaining Working Interest left after excluding the Working Interest of the removed or resigned Operator (or its assignee or transferee).  In no event shall the resignation or removal of Operator become finally effective unless and until a successor Operator has been elected and assumed its duties.  Prior to the effective date of resignation or removal, the former Operator shall deliver to the successor Operator all records and data relating to the operations conducted by the former Operator to the extent such records and data are not already in the possession of the successor Operator.

4.4   <u>Effect of Bankruptcy</u>.  If Operator becomes insolvent, bankrupt or is placed in receivership, it shall give prompt notice of such event and, regardless of Operator's compliance with such notice requirement, shall be deemed to have resigned without any action by Non-Operators, except the selection of a successor.  If a petition for relief under the federal bankruptcy laws is filed by or against Operator, and the removal of Operator is prevented by the federal bankruptcy court, all Non-Operators and Operator shall comprise an interim operating committee to serve until Operator has elected to reject or assume this Agreement pursuant to the Bankruptcy Code, and an election to reject this Agreement by Operator as a debtor in possession, or by a trustee in bankruptcy, shall be deemed a resignation as Operator without any action by Non-Operators, except the selection of a successor.  During the period of time the operating committee controls operations all actions shall require the approval of two (2) or more Parties owning a majority interest based on ownership as shown on Exhibit "A".  In the event there are only two (2) Parties to this Agreement, during the period of time the operating committee controls operations, a third party acceptable to Operator, Non-Operator and the federal bankruptcy court shall be selected as a member of the operating committee, and all actions shall require the approval of two (2) members of the operating committee without regard for their interest in the Contract Area based on Exhibit "A".  Until such third party has been selected, the non-bankrupt Party shall serve as Operator and shall be entitled to operate the Contract Area as a reasonably prudent operator.

4.5   <u>Liability of Operator</u>.  If Operator resigns, is deemed to have resigned, or if Operator is removed as Operator, such resignation, deemed resignation, or removal shall not relieve Operator of any liabilities it may have to Non-Operator(s) or third parties for damages arising out of Operator's breach of this Agreement.

ARTICLE 5

AUTHORITY AND DUTIES OF OPERATOR

5.1   Exclusive Right to Operate.   Unless otherwise provided or agreed upon otherwise, Operator shall have the exclusive right and duty to conduct all operations pursuant to this Agreement.

5.2   Workmanlike Conduct.   Operator shall conduct all operations in a good and workmanlike manner as would a prudent operator under the same or similar circumstances. Operator shall not be liable to the Parties for losses sustained or liabilities incurred except such as may result from its gross negligence or willful misconduct.   Unless otherwise provided, Operator shall consult with the Parties and keep them informed of all important matters, including without limitation notice of any and all claims, proceedings, and lawsuits under Article 18 of this Agreement.

5.3   Liens and Encumbrances.   Operator shall endeavor to keep the Lease and equipment free from all liens and encumbrances occasioned by operations hereunder, except those provided for in Section 8.6.

5.4   Employees.   The number of employees and their selection, and the hours of labor and compensation for services performed shall be determined by Operator.   Except as provided in Exhibit "C", such employees shall be the employees of Operator.

5.5   Records.   Operator shall keep accurate books, accounts, and records of operations hereunder which, unless otherwise provided for in this Agreement, shall be available for inspection during normal office hours by Non-Operators or their authorized representatives pursuant to the provisions contained in Exhibit "C".

5.6   Compliance.   Operator shall comply with, and require all agents and contractors to comply with, all applicable laws, rules, regulations and orders of any governmental agency having jurisdiction.

5.7   Drilling.   Operator shall have all drilling operations (including completing, recompleting, deepening, deviating or Sidetracking, plugging back or working over) conducted by qualified and responsible independent contractors under currently competitive contracts. Operator may, however, employ its equipment and personnel in the conduct of such operations pursuant to written agreement between the Participating Parties.

5.8   Reports.   Operator shall make reports to governmental authorities that it has a duty to make as Operator and shall furnish copies of such reports to Participating Parties.

5.9   Information to Participating Parties.   Operator shall timely furnish each Participating Party the following information pertaining to each well being drilled:

    (a)   copy of application for permit to drill and all amendments thereto;

    (b)   daily drilling reports;

    (c)   complete report of all core analyses;

    (d)   copies of any logs or surveys as run;

    (e)   copies of any well test results, bottom-hole pressure surveys, gas and condensate analyses, or similar information;