Filed 13 May 9 P1:30
Chris Daniel - District Clerk
Harris County
ED101J017476983
By: anita perez

Cause No. 2013-17984

| | |
|---|---|
| ROOSTER OIL & GAS, LLC and ROOSTER PETROLEUM, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> BIRNHAM ENERGY INVESTMENT COMPANY, L.P. (f/k/a Implicit Oil & Gas, L.P.) and IMPLICIT OIL & GAS (VR 376), LLC, <br><br> Defendants. <br><br>―――――――――――――――――― <br><br> BIRNHAM ENERGY INVESTMENT COMPANY, L.P. (f/k/a Implicit Oil & Gas, L.P.) IMPLICIT OIL & GAS (VR 376), LLC, 376 OG HOLDINGS, LLC and TEXAS OG ACQUISITIONS, LLC, <br><br> Counter-Plaintiffs, <br><br> v. <br><br> ROOSTER OIL & GAS, LLC, ROOSTER PETROLEUM, LLC, ROOSTER ENERGY, LLC, ROOSTER ENERGY, LTD, ROBERT MURPHY, KENNETH F. TAMPLAIN, JR. and CHET MORRISON, <br><br> Counter-Defendants. | IN THE DISTRICT COURT <br><br><br><br><br><br><br><br><br><br><br><br> OF HARRIS COUNTY, TEXAS <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br> 165TH JUDICIAL DISTRICT |



## COUNTER-PLAINTIFFS' ORIGINAL COUNTERCLAIM AND APPLICATION FOR APPOINTMENT OF RECEIVER

TO THE HONORABLE JUDGE OF SAID COURT:

Counter-Plaintiffs Birnham Energy Investment Company, L.P. (f/k/a Implicit Oil & Gas, L.P. ("Birnham"), Implicit Oil & Gas (VR 376), LLC ("Implicit 376"), 376 OG Holdings, LLC ("OG Holdings") and Texas OG Acquisitions, LLC ("Acquisitions")

submit their Original Counterclaim and Application for Appointment of Receiver complaining of Counter-Defendants Rooster Oil & Gas, LLC ("Rooster OG"), Rooster Petroleum, LLC ("Rooster Petroleum"), Rooster Energy, LLC ("Rooster LLC") and Rooster Energy, Ltd ("Rooster Ltd"), Robert Murphy ("Murphy"), Kenneth F. Tamplain, Jr. ("Tamplain") and Chet Morrison ("Morrison") as follows:

### The Parties

1. Counter-Plaintiff Birnham is a limited partnership organized and existing under the laws of the State of Texas and is a named Defendant in Counter-Defendants' suit.

2. Counter-Plaintiff Implicit 376 is a limited liability company organized and existing under the laws of the State of Texas and is a named Defendant in Counter-Defendants' suit.

3. Counter-Plaintiff OG Holdings is a limited liability company organized and existing under the laws of the State of Texas. OG Holdings is not a named Defendant, but joins in this Counterclaim pursuant to Texas Rule of Civil Procedure 40.

4. Counter-Plaintiff Acquisitions is a limited liability company organized and existing under the laws of the State of Texas. Acquisitions is not a named Defendant, but joins in this Counterclaim pursuant to Texas Rule of Civil Procedure 40.

5. Counter-Defendant Rooster OG is a Delaware limited liability company authorized to conduct business in Texas. Counter-Defendant Rooster OG has appeared in this suit and may be served with this Counterclaim through its

counsel of record pursuant to Rule 21a.

6. Counter-Defendant Rooster Petroleum is a Delaware limited liability company authorized to conduct business in Texas. Counter-Defendant Rooster Petroleum has appeared in this suit and may be served with this Counterclaim through its counsel of record pursuant to Rule 21a.

7. Counter-Defendant Rooster LLC is a limited liability company organized and existing under the laws of the State of Louisiana. Although Rooster LLC conducts business in the State of Texas, it is not authorized to conduct such business and has not appointed a registered agent for service of process. Rooster LLC does maintain its offices in Houston, Harris County, Texas and may be served with process by serving its CEO and President Robert Murphy at 16285 Park 10 Place, Houston, TX 77084.

8. Counter-Defendant Rooster Ltd is a publicly traded limited partnership organized and existing under the laws of Canada. Although Rooster Ltd conducts business in Texas, it is not authorized to do so and has not appointed a registered agent for service of process. Rooster Ltd does maintain its offices in Houston, Harris County, Texas and may be served with process by serving its CEO and President Robert Murphy at 16285 Park 10 Place, Houston, TX 77084.

9. Counter-Defendant Murphy is an individual resident of Harris County, Texas and may be served with process at his office located at 16285 Park 10 Place, Houston, TX 77084.

10. Counter-Defendant Tamplain is an individual resident of Harris County, Texas and may be served with process at his office located at 16285 Park 10

Place, Houston, TX 77084.

11. Counter-Defendant Morrison is an individual that engages in business in the State of Texas, but does not personally maintain an office or residence in the State of Texas. Counter-Defendant Morrison may be served with process by serving the Texas Secretary of State as his registered agent at 1019 Brazos Street, Austin, Texas 78701, with two copies of citation and this Original Counterclaim, who shall forward a copy of same to Counter-Defendant Morrison at his office located at 9 Bayou Delarge Road, Houma, LA 70363.

### Statement of Facts

### The Interest

12. This is a matter involving an oil and gas property, commonly referred to as Vermilion 376 ("VR 376") located in the Gulf of Mexico held by Counter-Defendant Rooster OG pursuant to a lease with the United States, as lessor, lease number OCS-G 14428 (the "Lease"), and more particularly the rights to drill and operate in those elevations between the ocean floor and 9,000 feet true vertical depth (the "Operating Rights").

13. On January 26, 2012, Rooster OG and Rooster Petroleum, on the one hand, and Birnham (then known as Implicit), on the other, entered into participation agreement (the "Participation Agreement"), a true and correct copy of which is attached hereto as Exhibit A.

14. Under the Participation Agreement, Rooster OG and Rooster Petroleum, which represented they owned 50% Operating Rights interest and were in the process of obtaining the remaining 50% of the "Operating Rights from Apache

Corporation, agreed to assign an undivided twenty-five percent (25%) interest from the Operating Rights in two exploratory wells (the "Exploratory Wells") (the VR 376 A-2 Well and the VR 376 A-4 Well)(hereinafter referred to as the "Participation Interest") in exchange for Birnham's agreement to participate in the drilling of the wells.

15. Pursuant to the Participation Agreement, Birnham agreed to pay 33.3333% of all drilling and completion costs and, thereafter, 25% of all lease-operating expenses in exchange for the Participation Interest.

16. Neither Rooster OG nor Rooster Petroleum owned, or at any time has owned, a working interest in the Lease for VR 376 itself. Instead, Rooster OG nominally owned the subsea surface to the depth of 9,000'.

17. The Participation Agreement did not give Birnham any right, ability or authority to operate or participate in the operation of the Exploratory Wells or the Participation Interest, nor could it without the joinder of the true owners of the working interest in VR 376.

18. Under section 5 of the Participation Agreement, the parties acknowledged that Rooster Petroleum was the operator of the Lease and that it would continue as operator of the Lease in accordance with the terms and provisions of the operating agreement governing the operations on the Lease effective as of October 1, 1999 (the "Operating Agreement"), a true and correct copy of which is attached hereto as Exhibit B.

19. On or about June 20, 2012, in accordance with the Participation Agreement, Rooster OG executed and recorded with the BOEM two Wellbore

COUNTER-PLAINTIFFS' ORIGINAL COUNTERCLAIM AND                                    5
APPLICATION FOR APPOINTMENT OF RECEIVER

Assignments and Bills of Sale assigning the Participation Interest in each of the Exploratory Wells to Implicit 376, Birnham's assignee as approved by Rooster (the "376 Wellbore Assignment"), true and correct copies of which are attached hereto as Exhibit C. Rooster OG subsequently reconfirmed the assignment to Implicit 376 on July 2, 2013, when it filed and recorded with the BOEM an Amended and Restated Wellbore Assignment and Bill of Sale of the Participation Agreement (the "Amended 376 Wellbore Assignment"), a true and correct copy of which is attached hereto as Exhibit D.

20. On September 17, 2012, Implicit 376 assigned its interest in the Exploratory Wells under the Participation Agreement to Counter-Plaintiff Acquisitions (the "Acquisitions Assignments"), true and correct copies of which are attached hereto as Exhibit E. The Acquisition Assignments, which were prepared and filed by the same law firm that prepared and filed the 376 Wellbore Assignments and the Amended 376 Wellbore Assignment on behalf of Rooster OG, were filed of record with the BOEM on September 19, 2012 [*Id*].

21. Being an assignment of participation interests only, the 376 Wellbore Assignments and the Amended Wellbore Assignment neither transferred, assigned, reduced nor diminished Rooster OG's nominal Operating Rights interest in VR 376 [*See*, BOEM Serial Register Page for VR 376 attached hereto as Exhibit F and incorporated herein by reference].

### Counter-Defendants Steal Counter-Plaintiffs' Minerals

22. Under the terms of the Participation Agreement, Implicit 376 agreed to pay 33.33333% of all AFE costs up through the Casing Point of the Exploratory

Wells. At such time, Implicit 376 could elect to continue its participation and, if it elected to continue, Implicit would be liable for 25% of all costs, including the costs to complete the Wells, in exchange for a 25% interest in any production.

23. Implicit 376 paid Counter-Defendants a total of $4,769,005.73 (the "Implicit 376 Payments") under the Participation Agreement. The Implicit Payments included all amounts billed through Casing Point as well as amounts billed after Implicit 376 elected to participate in the completion of the Exploratory Wells.

24. The Exploratory Wells proved to be productive and produced both condensate and gas in prodigious quantities, with Implicit 376's share totaling approximately $250,000 per month.

25. In the second half of 2012, Implicit 376's parent, Birnham, suffered some setbacks with respect to other oil and gas operations that proved to be non-productive. The consequence to Implicit 376 was that it was unable to fund the entire amount due and owing Counter-Defendants for the remaining portion of the completion of the Exploratory Wells from any source other than the proceeds to which it was entitled from the production of the Exploratory Wells.

26. Under the terms of the Operating Agreement, Counter-Defendants are not entitled to withhold any amounts from Implicit 376's share of the minerals and proceeds thereof from the Exploratory Wells, even if Implicit 376 has failed to pay amounts allegedly owed.

27. Counter-Defendants have continued to operate the Exploratory Wells and have continued to produce substantial volumes of minerals, resulting in

proceeds in the millions of dollars since at least August 2012 (the "Ongoing Production").

28. Rather than pay Counter-Plaintiffs' their share of the Ongoing Production, Counter-Defendants have stolen it. Specifically, despite repeated demand, Counter-Defendants have failed to pay Counter-Plaintiffs their share of the Ongoing Production in accordance with the terms of the Participation Agreement, have failed to account to Counter-Plaintiffs for their share of the Ongoing Production and have refused even to offset Counter-Plaintiffs' share of the Ongoing Production against amounts allegedly owed. Counter-Defendants' failure to pay and account to Counter-Plaintiffs for their share of the Ongoing Production constitutes theft in violation of 18 U.S.C. § 659 and, upon information and belief, totals to date in excess of $3 million.

29. With Counter-Defendants continuing to steal Implicit 376's minerals, Implicit 376 defaulted on a promissory note (the "Note") to an affiliated entity, which Note was assigned to Counter-Plaintiff OG Holdings. The Note was secured by the Participation Interest and memorialized in an Act of Mortgage (the "Mortgage").

30. On September 20, 2012, suit was filed in the United States District Court for the Western District of Louisiana (the "Federal Court") by OG Holdings against Acquisitions, the assignee of the Participation Interest and mortgagor under the Mortgage (the "Federal Suit"). OG Holdings sought to foreclose upon the Participation Interest in the Federal Suit.

31. On October 25, 2012, the Federal Court entered an post-judgment order effecting, among other things, a seizure of the Participation Interest and

appointing Counter-Plaintiff OG Holdings as keeper thereof (the "Keeper Order"). Counter-Defendants were provided with a copy of the Keeper Order and notice of OG Holdings appointment as keeper.

32. In direct violation of the Federal Court's Keeper Order and the express terms and provisions of the Participation Agreement and Operating Agreement and federal law, Counter-Defendants have continued to steal Counter-Plaintiffs' share of the Ongoing Production, refusing to remit Counter-Plaintiffs' share of the proceeds of the minerals to OG Holdings and refusing to account for the minerals stolen.

33. Although Counter-Defendants have precluded Counter-Plaintiffs from knowing the exact amount of minerals stolen, Counter-Plaintiffs have reasonably calculated the amount to be approximately $3 million as of the date of this Counterclaim, with additional amounts accruing in the amount of at least $250,000 per month.

### Counter-Defendants Have Admitted To Theft Of The Minerals

34. From August 2012, through approximately mid-March 2013, Counter-Plaintiffs were led to believe that Counter-Defendants were offsetting Counter-Plaintiffs' share of the Ongoing Production against the amounts allegedly owed, although not entitled to do so under the Operating Agreement, Participation Agreement, or Keeper Order. Counter-Plaintiffs continued to press Counter-Defendants for an accounting to confirm the status of the offset.

35. While Counter-Defendants refused to respond to Counter-Plaintiffs numerous requests for an accounting, Counter-Defendants did not notify Counter-Plaintiffs that they not offsetting the amounts against the alleged outstanding

balance owed.

36. On March 25, 2013, Counter-Plaintiffs confronted Counter-Defendants directly on whether or not Counter-Defendants were offsetting Counter-Defendants' share of production against the alleged amounts owed and demanded, once again, that Counter-Defendants provide an accounting of Counter-Plaintiffs' minerals.

37. In response to the foregoing, Counter-Defendants, acting through Counter-Defendant Tamplain, confirmed that Counter-Defendants were not offsetting and made Counter-Defendants' intentions of continuing to keep Counter-Plaintiffs from receiving minerals by writing: "*I say we control the wells and you will have a very long, difficult and costly time dealing with our 'special purpose entities' for many years to come.*" [March 25, 2013, email string, attached as Exhibit G, p. 2 (emphasis added)].

38. Counter-Defendants continued malicious and criminal intent was further demonstrated by a subsequent contrived, but ineffective, basis upon which Counter-Defendant sought to justify its failure and refusal to pay, offset and/or account for Counter-Plaintiffs' share of the Ongoing Production.

39. Specifically, in response to demands made by Counter-Plaintiff OG Holdings under the Keeper Order, Counter-Defendants asserted that Counter-Defendants had purportedly not stolen Counter-Plaintiffs minerals because Counter-Plaintiffs had allegedly failed to nominate its minerals and, allegedly under the Operating Agreement and the Gas Balancing Agreement, Counter-Plaintiffs were simply in an imbalance with respect to the Ongoing Production (hereinafter referred to as "Counter-Defendants' Gas Balancing Justification").